AMERICAN COUNTRY INSURANCE COMPANY, Plaintiff-Appellee, v. ANTHONY WILCOXON, Defendant-Appellant.

First District (2nd Division)   No. 86—2493

Opinion filed August 11, 1987.—Rehearing denied September 8, 1987.

Edward J. Bradley, Jr., of Bradley, Bradley & Nedderman, of Chicago, for appellant.

Alvin R. Becker and Steven P. Garmisa, both of Beermann, Swerdlove,

Woloshin, Barezky & Berkson, of Chicago, for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

Defendant, Anthony Wilcoxon, appeals from an order granting summary judgment in favor of plaintiff, American Country Insurance Co. (American).

The underlying transaction involves a personal injury suit brought by defendant, Anthony Wilcoxon, who sustained personal injuries when he was struck by a Checker taxi while he was a pedestrian on a Chicago sidewalk. Checker leased the cab to Willie White for a 24-hour period. White permitted David Overstreet to operate the cab. Overstreet allegedly drove the cab onto the sidewalk and injured Wilcoxon. The personal injury action filed by Wilcoxon is pending in the circuit court of Cook County and is not involved in this appeal.

Plaintiff filed a complaint for declaratory judgment against Checker, the owner of the cab; Overstreet, the driver of the cab; and Wilcoxon, the injured pedestrian. White, who leased the cab from Checker and permitted Overstreet to use the cab, was not sued. Plaintiff sought and obtained summary judgment declaring that it was not required to pay or indemnify for Wilcoxon's injuries pursuant to a bond which it issued to Checker in accordance with the Illinois financial responsibility statute. Ill. Rev. Stat. 1983, ch. 95½, par. 8—101 *et seq.*

Three affidavits were presented in support of plaintiff's motion for summary judgment. Plaintiff's president verified the authenticity of the bond issued to Checker. The other two affidavits were from the lease manager and personnel manager of Checker, who verified the authenticity of the 24-hour lease from Checker to White and the fact that Overstreet, the driver, was not an employee or lessee of Checker and was a stranger to Checker. Having provided plaintiff with these essential affidavits, Checker, as a defendant, filed an appearance but failed to answer plaintiff's complaint or otherwise plead, and permitted a default judgment to be entered against it.

Defendant Overstreet failed to appear or answer and was also defaulted. Defendant Wilcoxon, the injured pedestrian, appeared and opposed plaintiff's action and is the only party appealing the order of the circuit court of Cook County.

The Illinois financial responsibility statute requires that the owner of a cab must provide proof of financial responsibility, by way of bond, certificate of self-insurance or insurance policy, to cover liability for personal injury and property damage in certain amounts and for the satisfaction of any judgment that may be rendered against the

"owner or any person operating the motor vehicle with the owner's express or implied consent." Ill. Rev. Stat. 1983, ch. 95½, par. 8—101 *et seq.*

The bond issued to Checker by American, pursuant to the requirements of the Illinois financial responsibility statute, provides that American will satisfy any judgment "resulting from negligence of such Owner/Principal, his agent, or any person operating the motor vehicle with his express or implied consent." The bond document does not make reference to any rider. However, an unsigned, untitled page, which is alleged to be a rider to the bond, provides in part :

"(c) **Express or implied consent** is a motor vehicle described in this instrument which is being used with the express or implied consent of CHECKER when it is being used by:

(i) an employee of CHECKER while operating said motor vehicle in the course and scope of his employment;

(ii) a lessee of CHECKER while operating said motor vehicle pursuant to a written lease.

This bond shall not apply to any permitte [*sic*], sublessee, or bailee or an employee or lessee of CHECKER. It is the specifice [*sic*] agreement and intention of CALUMET and CHECKER that the doctrine known as the Initial Permission Doctrine shall not apply."

Although somewhat unorthodox in form, for the purpose of this opinion we will assume that the rider is expressly incorporated into and became a part of the bond.

What has become known as the "initial permission doctrine" was first announced in Illinois in the case of *Maryland Casualty Co. v. Iowa National Mutual Insurance Co.* (1973), 54 Ill. 2d 333, 297 N.E.2d 163. Justice Schaefer explained the rationale of the initial permission doctrine in *United States Fidelity and Guaranty Co. v. Mc-Manus* (1976), 64 Ill. 2d 239, 356 N.E.2d 78, as follows:

"In *Maryland Casualty* the owner of a car had given his son permission to drive it, but had told him that he must not allow anyone else to do so. Notwithstanding this injunction, the son allowed a friend to drive the car, and while the friend was driving it, the car collided with another vehicle. \* \* \*

We held that the owner's policy applied, on the ground that when the owner has given permission to someone else to use his car, the owner's insurance will cover not only the first user, but others whom the first user permits to drive the car, even though the granting of such permission violates the terms on which the owner made the car available.

The rationale of *Maryland Casualty,* as the appellate court in the present case recognized, was 'to bring simplicity to what had become a complex area of the law necessitating frequent litigation and to further implement a policy long adhered to regarding the benefit received by the public from private insurance contracts.' [Citation.]" 64 Ill. 2d 239, 242, 356 N.E.2d 78.

The 24-hour written lease between Checker and White provided that Checker would provide insurance required by State law and Chicago city ordinance "covering lessor and lessee" in the limits prescribed by law. It also provides that the lessee agrees to be "the sole driver of the leased vehicle."

It is undisputed that Overstreet operated the cab, during the 24-hour term of the lease, when Wilcoxon was injured. For purposes of his ruling, the trial judge found that Overstreet operated the cab with the express permission of the lessee White.

The issue presented is whether the trial court correctly determined that financial responsibility coverage did not extend to the driver of the cab.

By enacting section 89—101 *et seq.* (Ill. Rev. Stat. 1983, ch. 95½, par. 8—101 *et seq.*), the Illinois legislature declared that it shall be unlawful for any person, firm or corporation to operate any motor vehicle in any incorporated city in this State for the carriage of passengers for hire "unless such person, firm or corporation has given, and there is in full force and effect and on file with the Secretary of State of Illinois, proof of financial responsibility provided in this Act. *** If the person operating such motor vehicle is not the owner, then proof of financial responsibility filed hereunder must provide that the owner is primarily liable." (Ill. Rev. Stat. 1983, ch. 95½, par. 8—101.) Proof of financial responsibility may be given by filing an insurance policy, certificate of self-insurance or surety bond with the Secretary of State. Ill. Rev. Stat. 1983, ch. 95½, par. 8—102.

In this case, Checker elected to prove financial responsibility by filing a surety bond in which Checker was the principal and the plaintiff, American, was the surety. Under section 8—104 (Ill. Rev. Stat. 1983, ch. 95½, par. 8—104), the bond shall provide for the payment of each judgment by the owner within 30 days after it becomes final "provided each judgment shall have been rendered against such owner or any person operating the motor vehicle with the owner's express or implied consent."

Proof of financial responsibility is a condition to the issuance of an Illinois license (Ill. Rev. Stat. 1983, ch. 95½, par. 8—114), and failure to comply is a Class A misdemeanor (Ill. Rev. Stat. 1983, ch. 95½,

par. 8—116).

The bond filed by Checker as principal and American as surety recites that it is provided as proof of financial responsibility of Checker for the issuance of a State license pursuant to the statute. (Ill. Rev. Stat. 1983, ch. 95½, par. 8—101 *et seq.*) It tracks the language of the statute in providing for the payment of any final judgment against Checker or any person operating the motor vehicle with Checker's "express or implied consent." It concludes that the condition of the bond is that Checker "shall perform its obligations under the aforesaid provisions of the Motor Vehicle Code."

What we will assume to be a rider to the bond, but which does not bear the conventional indicia of a rider, states that Checker, as principal, and American, as surety, agree that "the Initial Permission Doctrine shall not apply."

The trial court expressly found that Overstreet, the tortfeasor, was operating the cab with the consent of Willie White, the lessee of the cab. The 24-hour lease, expiring December 6, 1983, at 6 a.m., provides that the lessee agrees "[t]o be the sole driver of the leased vehicle."

## A

■ We will first consider the effect of the lease provision requiring White to be the sole driver of the cab. Although there is no Illinois case on point, cases from other jurisdictions with similar financial responsibility statutes provide guidance.

In *Motor Vehicle Accident Indemnification Corp. v. Continental National American Group Co.* (1974), 35 N.Y.2d 260, 319 N.E.2d 182, 360 N.Y.S.2d 859, Discount Rent-A-Car (Discount) was the named insured under a liability policy issued by Continental pursuant to a New York financial responsibility statute which is substantially the same as the Illinois statute. Discount leased the vehicle to Anderson under a written lease agreement which contained a clause that the vehicle would be driven by the lessee or an immediate adult member of his family. Anderson permitted a person to operate the vehicle who was not a permitted user under the lease agreement. The New York Court of Appeals held that the insurance company was financially responsible for the accident which occurred when the driver operated the leased vehicle with the express permission of the lessee, even if driven in violation of a private rental agreement between the rental agency and the lessee.

The New York Court of Appeals reasoned that in recognition of the fact that automobile leasing has become a widespread business

and it was inevitable that leased vehicles would become involved in their share of accidents, "the Legislature has required rental agencies to file a financial security bond as a certificate of self-insurance prior to registering their vehicles [citation]." (35 N.Y.2d 260, 263, 319 N.E.2d 182, 184, 360 N.Y.2d 859, 861.) Restrictions in car rental agreements violate public policy because "[a] slight deviation from such a restrictive lease could render an injured victim devoid of adequate protection, which is contrary to the legislative intent envisaged by section 388 of the Vehicle and Traffic Law." (35 N.Y.2d 260, 264, 319 N.E.2d 182, 184, 360 N.Y.2d 859, 862.) The court concluded:

> "Discount, and in turn, Continental, knew or certainly should have known that the probabilities that vehicles coming into the hands of another person are entirely too great for respondent to evade responsibility. We hold, in the circumstances of this case, that Discount gave constructive consent to Sills who drove its vehicle with the consent of its lessee. To put it another way, these considerations of sound public policy will prevent the evasion of the liability of one leasing cars for profit (and, in turn, his insurer) via the attempted device of restrictions on or conditions of use which run counter to the recognized realities and, in a measure, disguise the transaction. Since, as is conceded, Anderson gave his consent to Sills to operate the rental vehicle, we find that he was operating it with the constructive consent of Discount and, perforce, with the 'permission' envisioned by the provisions of section 388. It follows that Sills was insured under the policy issued by Continental which is held to be responsible for Sills' defense and for paying the resulting judgment." 35 N.Y.2d 260, 264-65, 319 N.E.2d 182, 185, 360 N.Y.2d 859, 862-63.

This issue also came before the California Supreme Court in 1966. Hertz leased a car under a written agreement which restricted the use of the vehicle to the lessee, his family or an employer or employee of the lessee. The car was involved in an accident while operated by an unauthorized person with the express consent of the lessee. California also had a financial responsibility law which was substantially the same as the Illinois statute. In *Atlantic National Insurance Co. v. Armstrong* (1966), 65 Cal. 2d 100, 416 P.2d 801, 52 Cal. Rptr. 569, the California Supreme Court held that the driver "could not be excluded from coverage under the policy. Vehicle Code section 415 requires motor vehicle liability policies to provide coverage for the liability not only of the named insured but of any other person using the vehicle with the express or implied permission of the insured." (65 Cal. 2d

100, 105, 416 P.2d 801, 804, 52 Cal. Rptr. 569, 572.) The court concluded: "As has been said with regard to an analogous issue, 'The statute is founded upon principles of public policy, and an anomalous situation would be created if the rights of third parties, for whose protection the law was adopted, could be hindered, delayed, or defeated by *** private agreements ***.' [Citation.]" 65 Cal. 2d 100, 106-07, 416 P.2d 801, 806, 52 Cal. Rptr. 569, 574.

The underlying principle is that the protection of the public under financial responsibility statutes transcends the private agreement between the parties, where the agreement runs counter to sound public policy. In the case at bar, public policy considerations are greater than those involved in the New York and California cases. Those cases involved a lease for profit of private motor vehicles. Here, we also have a lease of vehicles for profit with the added public concern of having the vehicles used for a public purpose rather than a private purpose. The protection of the public in the operations of those engaged in the transportation of passengers for hire has always been a matter of utmost public concern.

In the case before us, Checker leased the cab to White for a 24-hour period and limited the operation of the cab to him. Although White is paying rent for 24 hours, it would not be reasonable to expect that he physically could, or should, operate the cab for 24 hours. It is generally known that taxi companies keep their own cabs in operation around the clock but do not require the same driver to work a 24-hour shift. Since it is the function of a taxi company to provide efficient and safe transportation to the public according to State law and city ordinance, it is not contemplated that a cab remain idle nor that the driver operate the cab for a period of time that may impair his efficiency and endanger public safety.

Applying the public interest principle espoused in the New York and California cases, we conclude that Checker gave its constructive consent to White to permit Overstreet to operate the cab in spite of the lease provision to the contrary. Thus, the initial permission rule is applied, notwithstanding the prohibition in the lease.

### B

Having decided that under the facts of this case the initial permission doctrine can be applied notwithstanding the limitation of use in the lease, we now consider whether the rider provision in the bond can effectively negate that doctrine.

■ Financial responsibility statutes governing public transportation are enacted for the protection of passengers and members of the

public who may be injured by the operators of such vehicles. Statutory bonds must be construed most strongly against the surety to accomplish the purpose of the statute. The State and the public are the true beneficiaries of the bond. 12A G. Couch, Insurance sec. 45:770 (rev. ed. 1981).

■ An omnibus coverage clause in a bond or insurance policy can be expressed in terms such as "with the express or implied consent" of the owner. (12 G. Couch, Insurance sec. 45:319 (rev. ed 1981).) This omnibus coverage language is found in section 8—104 (Ill. Rev. Stat. 1983, ch. 95½, par. 8—104). In effect, the Illinois legislature has codified the initial permission doctrine. Checker and its surety cannot, in a private agreement allegedly included in the bond rider, repeal or diminish the effect of the Illinois statute designed to protect the public. The principles of law are well stated in 12A G. Couch, Insurance sec. 45:738 (rev. ed. 1981): "Where there is a conflict between the provisions of the policy and the financial responsibility act, the statute controls and the policy provision in question is void, for the agreement of the insurer and the insured in the policy cannot operate to cut off the rights of injured third persons. The financial responsibility act is read into and forms part of a policy of insurance required thereby."

In *Faltysek v. Kloepfer* (1971), 3 Ill. App. 3d 8, 279 N.E.2d 105, this court held that the Illinois statute "manifest[s] a legislative intent that as to a motor vehicle used in transporting passengers for hire, the owner shall insure himself and any person who operates the vehicle with his express or implied permission against any injury negligently caused a member of the public." (3 Ill. App. 3d 8, 12, 279 N.E.2d 105.) We concluded that the cab company cannot obtain the benefits of a license to carry passengers for hire and "contract away the liability and responsibility the law imposes." 3 Ill. App. 3d 8, 12, 279 N.E.2d 105.

Therefore, even if the rider is considered a part of the bond, it cannot restrict, reduce or avoid the provisions of the statute.

Based on the foregoing, the judgment of the circuit court of Cook County is reversed.

Reversed.

SCARIANO, P.J., and HARTMAN, J., concur.