(No. 65982.

AMERICAN COUNTRY INSURANCE COMPANY, Appellant, v. ANTHONY WILCOXON, Appellee.

*Opinion filed March 22, 1989.*

CALVO, J., took no part.

MORAN, C.J., joined by RYAN, J., dissenting.

Beermann, Swerdlove, Woloshin, Barezky & Berkson, of Chicago (Alvin R. Becker and Howard A. London, of counsel), for appellant.

Edward J. Bradley, Jr., of Bradley and Bradley, of Chicago, for appellee.

JUSTICE STAMOS delivered the opinion of the court:

Plaintiff, American Country Insurance Company (American), filed a complaint for declaratory judgment on July 26, 1984, against defendant Wilcoxon, among others, seeking a finding that it had no duty to pay under a bond issued to insured defendant Checker Taxi Company (Checker), for injuries suffered by Wilcoxon in an accident involving a cab owned by Checker. The trial court granted plaintiff's motion for summary judgment, finding that plaintiff had no duty, pursuant to the terms of the bond, to pay or indemnify the defendants. Defendant Wilcoxon appealed and the appellate court reversed. (159 Ill. App. 3d 884.) We allowed plaintiff's petition for leave to appeal (107 Ill. 2d R. 315).

The primary issue is whether an insurer is permitted to exclude from a surety bond, issued pursuant to the Illinois financial responsibility statute governing taxicab owners (Ill. Rev. Stat. 1983, ch. 95½, par. 8—101 *et seq.*), coverage for members of the public who are injured through the negligence of a cabdriver who did not enter into a lease with the cab company whose cab he was driving.

Plaintiff's suit for declaratory judgment was prompted by a personal injury suit filed in the circuit court of Cook County by Wilcoxon; Wilcoxon sued Checker and David Overstreet after a cab owned by Checker and being driven by Overstreet struck Wilcoxon on December 5, 1983, while Wilcoxon was a pedestrian. Plaintiff advised Checker that pursuant to the terms of the bond it was not liable to pay any judgments against Checker. Plaintiff then filed the present action. Wilcoxon's suit is not involved in this appeal.

Checker and American executed a bond pursuant to the Illinois financial responsibility statute governing taxicab owners under the Illinois Vehicle Code (Ill. Rev. Stat. 1983, ch. 95½, par. 8—101 *et seq.*) which stated that American would satisfy any judgment "resulting from negligence of such Owner/Principal[,] his agent, or any person operating the motor vehicle with his express or implied consent, in the penal sum of Two Hundred Fifty Thousand Dollars." The bond covered the period January 1, 1983, to December 31, 1983. An unsigned rider attached to the bond defined, among other things, the term "express or implied consent." The rider stated:

> "(c) Express or implied consent is a motor vehicle described in this instrument which is being used with the express or implied consent of CHECKER when it is being used by

(i) an employee of CHECKER while operating said motor vehicle in the course and scope of his employment;

(ii) a lessee of CHECKER while operating said motor vehicle pursuant to a written lease.

This bond shall not apply to any permitte [sic], sublessee, or bailee or an employee or lessee of CHECKER. It is the specifice [sic] agreement and intention of CALUMET and CHECKER that the doctrine known as the Initial Permission Doctrine shall not apply."

We note that the way the rider is worded, particularly the language purporting to define "express or implied consent" by equating "consent" with a "motor vehicle," makes it nearly incomprehensible.

Checker leased one of its cabs to Willie White on December 5, 1983. The written lease was for a 24-hour period, from December 5 to December 6, and stated that Checker would provide insurance covering both "[l]essor and [l]essee, in the limits and of the types prescribed by ordinances of the City of Chicago and laws of the State of Illinois." The lease also stated that the lessee agrees "[t]o be the sole driver of the leased vehicle." According to the complaint for declaratory judgment and Wilcoxon's answer, Willie White gave possession of the leased Checker cab to David Overstreet sometime on December 5, 1983. While Overstreet was driving the cab, he struck and injured Wilcoxon, a pedestrian. Wilcoxon subsequently filed a personal injury suit against Checker and Overstreet.

American filed suit seeking declaratory relief against Wilcoxon, Checker and Overstreet. The complaint for declaratory judgment alleged that the bond issued by American (previously known as the Calumet Insurance Company) was in full force and effect on the day of the accident, but provided for coverage only when a Checker cab was being operated with the express or implied consent of Checker. The complaint stated that Willie

White's transfer of possession of the rented cab to David Overstreet, who was not an employee, agent or servant of Checker, was without the knowledge, consent or permission of Checker. In his answer to the complaint, Wilcoxon admitted that Overstreet was in possession of the cab that struck him. Neither Checker nor Overstreet filed an answer. The trial court found that all three defendants had defaulted and entered judgment against them. The trial court subsequently vacated that order as to Wilcoxon.

American then filed a motion for summary judgment, contending that the bond clearly and specifically applied only to an employee of Checker or a lessee of Checker operating pursuant to a written lease. The motion also contended that the bond had served notice that the initial permission doctrine would not apply. Attached to the motion were three affidavits in support of the motion.

The first affidavit was that of the president of American; the bond, the affidavit stated, was filed with, and approved by, the Illinois Secretary of State and the administrator of taxicab ordinances for the City of Chicago. The second and third affidavits, of the lease manager and personnel manager of Checker, asserted that no lease record between David Overstreet and Checker, or record of any kind relating to employment of Overstreet by Checker, could be found. After a hearing, the trial judge granted the motion.

Wilcoxon appealed the trial court's order, and the appellate court reversed. The court found that the initial permission doctrine applied, notwithstanding the lease provision forbidding White to allow anyone else to operate the cab, because the "protection of the public under financial responsibility statutes transcends the private agreement between the parties, where the agreement runs counter to sound public policy." (159 Ill. App. 3d at 890.) The court held that Checker, therefore, had given

its constructive consent to White to permit Overstreet to operate the cab. The court further held that the Illinois legislature had codified the initial permission doctrine in section 8—104 of the Illinois Vehicle Code (Ill. Rev. Stat. 1983, ch. 95½, par. 8—104), and that Checker and its surety, American, "cannot, in a private agreement allegedly included in the bond rider, repeal or diminish the effect of the Illinois statute designed to protect the public" (159 Ill. App. 3d at 891).

Plaintiff contends that the appellate court expanded the plaintiff's liability beyond that imposed by statute and exceeded its authority by rewriting the statute. Plaintiff argues that the initial permission rule is a rule of contract construction that does not apply to the facts of this cause; the rule may be specifically avoided, plaintiff asserts, by parties to an insurance contract. Plaintiff further contends that the appellate court's ruling that Checker constructively consented to the operation of the cab by Overstreet conflicts with a provision in the Chicago Municipal Code.

Defendant argues that the initial permission rule applies here and extends coverage to all successive permittees operating a vehicle used in public transportation. Defendant asserts that this court's earlier decision in *Maryland Casualty Co. v. Iowa National Mutual Insurance Co.* (1973), 54 Ill. 2d 333, rejected the contention that an owner or insurance company may exclude coverage under an insurance bond by expressly disclaiming application of the initial permission rule. Defendant further argues that section 8—104 of the Illinois Vehicle Code mandates omnibus coverage which may not be impaired by restrictive terms in the insurance contract. Defendant finally contends that the appellate court opinion is consistent with the Chicago Municipal Code.

In *Maryland Casualty Co. v. Iowa National Mutual Insurance Co.* (1973), 54 Ill. 2d 333, this court held that

once the owner and named insured of an insurance policy containing an omnibus clause extending liability coverage to persons using the covered automobile with the permission of the owner has given permission to another to use the car, any person given permission to drive the car by the first permittee is covered under the policy. In *Maryland Casualty*, the insurance company issued a policy to Robert Smythe, as the named insured, containing an omnibus clause extending liability coverage to "any other person using such automobile, with the permission of the named insured." (*Maryland Casualty*, 54 Ill. 2d at 335.) Smythe's son, who had permission to drive the insured vehicle, allowed a friend, Horton, to drive it. While driving the Smythe vehicle, Horton was involved in an accident in which others were injured. Smythe's son had previously been instructed by his parents not to permit anyone else to operate the vehicle.

The court held that Horton was covered under the Smythe insurance policy, adopting the initial permission rule that " 'once the initial permission has been given by the named insured, coverage is fixed, barring theft or the like.' " (*Maryland Casualty*, 54 Ill. 2d at 342, quoting *Odolecki v. Hartford Accident & Indemnity Co.* (1970), 55 N.J. 542, 550, 264 A.2d 38, 42.) The court adopted the view that the initial permission rule not only applied to cover deviations by the first permittee from the permission given him by the insured concerning how or where the car was to be driven, but also encompassed situations where the first permittee exceeds the scope of permission by allowing a second permittee to drive the insured car. The court quoted approvingly from a New Jersey Supreme Court opinion that stated:

> " 'We fail, however, to see the distinction between a case where a first permittee exceeds the scope of permission in terms of use of time, place, or purpose, and a case where he exceeds the scope of permission in terms of use

of the vehicle by another. Once an owner voluntarily hands over the keys to his car, the extent of permission he actually grants is as irrelevant in the one case as in the other.' " (*Maryland Casualty*, 54 Ill. 2d at 341, quoting *Odolecki v. Hartford Accident & Indemnity Co.* (1970), 55 N.J. 542, 549-50, 264 A.2d 38, 42.)

The court noted that " 'the rule is based on the theory that the insurance contract is as much for the benefit of the public as for the insured, and that it is undesirable to permit litigation as to the details of the permission and use ***.' " *Maryland Casualty*, 54 Ill. 2d at 342, quoting *Konrad v. Hartford Accident & Indemnity Co.* (1956), 11 Ill. App. 2d 503, 515.

In *United States Fidelity & Guaranty Co. v. McManus* (1976), 64 Ill. 2d 239, this court expanded the coverage of the initial permission rule by holding that when the owner's policy contains an omnibus clause extending coverage to any person using the car with the permission of the insured, and the insured had given a person permission to use the car, "a further grant of permission from the initial permittee need not be shown in order to invoke the coverage." (*McManus*, 64 Ill. 2d at 243.) The court noted that, as suggested in *Maryland Casualty*, the initial permission rule does not extend coverage to a driver who has obtained possession by theft or tortious conversion. *McManus*, 64 Ill. 2d at 243; see *Western States Mutual Insurance Co. v. Verucchi* (1977), 66 Ill. 2d 527.

Plaintiff first contends that the appellate court, in finding that the Illinois legislature has codified the initial permission rule, exceeded its authority by rewriting the statute. Plaintiff argues that section 8—104 must be interpreted in accordance with its clear and unambiguous language (*County of Du Page v. Graham, Anderson, Probst & White, Inc.* (1985), 109 Ill. 2d 143), and asserts that the appellate court may not rewrite a statute to

make it conform to the court's idea of public policy (*Kozak v. Retirement Board of Firemen's Annuity & Benefit Fund* (1983), 95 Ill. 2d 211).

Section 8—104 states that the required bond shall provide for the payment of each judgment rendered against the owner "resulting from the negligence of such owner, his agent, or any person operating the motor vehicle with his express or implied consent." (Ill. Rev. Stat. 1983, ch. 95½, par. 8—104(2).) The bond issued by plaintiff to Checker tracks the language in the statute to provide coverage for any judgment against the owner for the "injury or death of any person resulting from negligence of such Owner/Principal[,] his agent, or any person operating the motor vehicle with his express or implied consent."

We do not believe that the appellate court erred in finding that section 8—104, by expressly providing for omnibus clause coverage in bonds required by the financial responsibility law, precludes cab owners and their sureties from excluding persons covered by the initial permission rule. The fundamental principle of statutory construction is to give effect to the intent of the legislature. (*County of Du Page v. Graham, Anderson, Probst & White, Inc.* (1985), 109 Ill. 2d 143, 151; *In re Marriage of Freeman* (1985), 106 Ill. 2d 290, 297; *City of Springfield v. Board of Election Commissioners* (1985), 105 Ill. 2d 336, 340-41.) Courts should first look to the statutory language as the best indication of the intent of the drafters. (*County of Du Page*, 109 Ill. 2d at 151; *People v. Boykin* (1983), 94 Ill. 2d 138, 141.) We believe that the plain language of the statute mandates omnibus clause coverage.

Plaintiff argues that our decision in *McManus* established that the initial permission rule is a rule of contract construction that is founded on "a broad provision extending liability coverage to persons operating or using a

car with the permission of the owner." (*McManus*, 64 Ill. 2d at 243.) We agree that the initial permission rule is based on the language of an omnibus clause extending coverage to those driving a car with the insured's permission. Section 8—104 contains such a clause, expressly requiring, in plain language, that a bond used to show financial responsibility "shall provide for the payment of each judgment *** resulting from the negligence of such owner, his agent, or any person operating the motor vehicle with his express or implied consent." (Ill. Rev. Stat. 1983, ch. 95½, par. 8—104(2).) An omnibus clause concerning those covered by driving an insured's car may equally well be expressed as, "those driving the car with the 'permission of the named insured,' " as in *Maryland Casualty* and *McManus,* or as, "those driving the car with the 'express or implied consent' of the owner," as the statute mandates. (See 12 G. Couch, Insurance §45:319 (rev. 2d ed. 1981).) Because the plain words of the statute require omnibus clause coverage, we believe that *Maryland Casualty* and *McManus* control here and preclude cab owners and their sureties from excluding from coverage successive permittee cabdrivers.

It is a basic axiom of statutory construction that in determining the intent of the legislature, a court may properly consider not only the language of the statute, but also "the reason and necessity for the law, the evils sought to be remedied, and the purpose to be achieved." (*Stewart v. Industrial Comm'n* (1987), 115 Ill. 2d 337, 341; *City of Springfield v. Board of Election Commissioners* (1985), 105 Ill. 2d 336, 341.) The legislative intent to insure that members of the public, injured through the negligence of cabdrivers driving cabs owned by others, are not left uncompensated for their injuries is reflected in the plain requirements of the financial responsibility law. The statute requires taxicab owners to

obtain proof of financial responsibility in the amount of $250,000 per taxi (Ill. Rev. Stat. 1983, ch. 95½, par. 8—104), before a taxi may be operated (Ill. Rev. Stat. 1983, ch. 95½, par. 8—101). Failure to comply with the provisions of the statute constitutes a misdemeanor. Ill. Rev. Stat. 1983, ch. 95½, par. 8—116.

As we mentioned earlier, the initial permission rule is grounded on the fact that the insurance contract is as much for the benefit of the public as for that of the insured. Here, the bond was issued in compliance with the financial responsibility statute requiring such bonds so as to afford recovery on judgments by aggrieved parties from negligent cabdrivers. Unlike private insurance contracts, the bond required in the case at bar is designed to insure that an owner operating a public conveyance business is financially responsible. The reasons underlying the initial permission rule are seldom stronger than in the present situation, where the insurance bond is required for the benefit of the public.

Although the bond issued by plaintiff to Checker contained an omnibus clause with language tracking the statute that coverage extended to any person operating the motor vehicle with the owner's express or implied consent, a rider that was unsigned, untitled and not referenced in the bond document itself was attached to the bond. The rider purported to define "express or implied consent" to limit coverage under the bond solely to drivers who were employees of Checker or lessees of Checker. The rider also disclaimed application of the initial permission rule. By including the required omnibus clause in the bond, and attempting to then limit its coverage through an unsigned, untitled and unreferenced rider attached to the bond, plaintiff revealed that it was fully cognizant of the requirements of section 8—104. Plaintiff probably would not have attached a rider attempting to disclaim liability under the omnibus clause if

plaintiff did not believe that the statute was at least ambiguous and that the statute might conceivably be construed to require coverage for other negligent cabdrivers in addition to the lessee cabdriver. The purpose of section 8—104 would be thwarted if cab owners and their insurers could limit their liability under the required omnibus clause simply by attaching a rider, negating liability for those covered under the required omnibus clause, to a bond or policy required under section 8—104. A statute that exists for protection of the public cannot be rewritten through a private limiting contract, if only because the members of the public to be protected are not and, of course, could not be made parties to any such contract.

A provision in a bond or policy, mandated by a financial responsibility law, that conflicts with the law is void and the statute controls. (12A G. Couch, Insurance §§45:770, 45:738 (rev. 2d ed. 1981); see *Harper v. City Mutual Insurance Co.* (1978), 67 Ill. App. 3d 694, 697; *Bertini v. State Farm Mutual Automobile Insurance Co.* (1977), 48 Ill. App. 3d 851, 854; *American Home Assurance Co. v. Hartford Insurance Co.* (1983), 190 N.J. Super. 477, 486, 464 A.2d 1128, 1133; *Atlantic National Insurance Co. v. Armstrong* (1966), 65 Cal. 2d 100, 106, 416 P.2d 801, 805, 52 Cal. Rptr. 569, 573.) Because the rider conflicts with the requirements of the statute, it is void.

In a similar case, the supreme court of California held that provisions in an insurance policy required under a California financial responsibility law, seeking to limit coverage to certain classes of permissive users and others whose injuries were compensable, were invalid. (*Atlantic National Insurance Co. v. Armstrong* (1966), 65 Cal. 2d 100, 416 P.2d 801, 52 Cal. Rptr. 569.) A California financial responsibility law required companies renting automobiles to the general public to "provide cover-

age for the liability not only of the named insured but of any other person using the vehicle with the express or implied permission of the insured." (*Armstrong*, 65 Cal. 2d at 105, 416 P.2d at 804, 52 Cal. Rptr. at 572.) The rental agreement limited use of the car to the lessee, his family or an employer or employee of the lessee, while the policy excluded liability arising out of injuries to occupants of the insured vehicle. The leased car was involved in an accident while a nonlessee driver was driving with the express permission of the lessee. The court held that the driver was not excluded from coverage under the policy, finding that the provision in the policy "purporting to limit coverage to certain classes of permissive users is invalid." (*Armstrong*, 65 Cal. 2d at 106, 416 P.2d at 805, 52 Cal. Rptr. at 573.) The court also held that the provision attempting to exclude certain persons whose injuries were compensable (the occupants of the insured vehicle) violated the statute. The court stated that it did not believe that:

> "the Legislature intended to leave the description of the class of persons whose injuries are compensable wholly to the discretion of private parties. As has been said with regard to an analogous issue, 'The statute is founded upon principles of public policy[,] and an anomalous situation would be created if the rights of third parties, for whose protection the law was adopted, could be hindered, delayed, or defeated by ... private agreements... .' [Citation.]" (*Armstrong*, 65 Cal. 2d at 106-07, 416 P.2d at 806, 52 Cal. Rptr. at 574.)

For all of the above reasons, we find that the rider is invalid.

For the same reasons, the provision in the lease requiring White to be the sole driver of the cab cannot restrict the application of the statute. Section 8—104 expressly requires omnibus clause coverage. Under *Maryland Casualty* and *McManus*, once the named in-

sured of an insurance policy containing an omnibus clause has given permission to another to use the car, any subsequent driver is covered as long as that driver did not engage in theft or tortious conversion to gain access to the car. A lease that attempts to limit coverage to less than that required by the statute is therefore of no effect against the statute's requirements.

Plaintiff contends that the appellate court opinion conflicts with a provision in the Chicago Municipal Code. Because Chicago Municipal Code section 28—9 (1982) provides that only a lessee or a contractor can operate a cab during the term of the lease or contract, the plaintiff argues that it had the right to exclude coverage for drivers barred from driving a cab under the municipal ordinance.

The Chicago ordinance regulates who may drive a cab in the City of Chicago. It has no relevance to cab owners and their sureties' responsibilities under section 8—104. While Overstreet may have violated the ordinance in this case, neither Checker nor plaintiff may take advantage of a municipal ordinance to negate their responsibility under a State statute. An insurer cannot defeat the purpose of section 8—104, and its statutory requirements, by relying on a provision of a municipal code that prohibits a nonlessee from driving a cab. To allow plaintiff to limit its liability by relying on a municipal ordinance would elevate municipal law over State law and violate the rule that a municipal statute that conflicts with a State statute is void. See *Huszagh v. City of Oakbrook Terrace* (1968), 41 Ill. 2d 387; *People ex rel. Fahner v. Chicago Transit Authority* (1984), 127 Ill. App. 3d 405.

Plaintiff finally argues that because the Illinois Secretary of State and the City of Chicago have approved the bond provision at issue, an inference is created that the bond conforms to the law. (*Kirk v. Financial Security Life Insurance Co.* (1978), 75 Ill. 2d 367.) In *Kirk* this

court noted that approval of an insurance policy provision by the Department of Insurance, "although not conclusive upon the courts, is, however, entitled to great weight as against the contention that such a provision is against public policy." (*Kirk*, 75 Ill. 2d at 376.) We have held that the rider attached to the bond at issue conflicts with State law. The approval of the Secretary of State and the City of Chicago, therefore, does not affect our decision. See *Bertini v. State Farm Mutual Automobile Insurance Co.* (1977), 48 Ill. App. 3d 851, 854-55.

For all of the above reasons, the judgment of the appellate court reversing the trial court's order granting summary judgment is affirmed.

*Judgment affirmed.*

JUSTICE CALVO took no part in the consideration or decision of this case.

CHIEF JUSTICE MORAN, dissenting:

Section 8—102 of the Illinois Vehicle Code (Code) provides that a person who operates a motor vehicle for transportation of passengers may provide a bond as proof of financial responsibility (Ill. Rev. Stat. 1985, ch. 95½, par. 8—102). Section 8—104 of the Code provides that:

> "The surety of [a] bond shall provide for the payment of each judgment by the owner of the motor vehicle *** for any injury to or death of any person or for damage to property other than such motor vehicle, resulting from the negligence of such owner, his agent, or any person operating the motor vehicle with his express or implied consent ***." (Ill. Rev. Stat. 1985, ch. 95½, par. 8—104(2).)

The last substantive amendment to section 8—104 was made by the legislature in 1957.

Sixteen years later, this court interpreted what is commonly called an "omnibus clause" contained in a pri-

vate automobile insurance policy. (*Maryland Casualty Co. v. Iowa National Mutual Insurance Co.* (1973), 54 Ill. 2d 333.) In *Maryland Casualty*, this court adopted the "initial permission doctrine" and interpreted the omnibus clause to provide " 'that once the initial permission has been given by the named insured, coverage is fixed, barring theft or the like.' " *Maryland Casualty*, 54 Ill. 2d at 342, quoting *Odolecki v. Hartford Accident & Indemnity Co.* (1970), 55 N.J. 542, 549-50, 264 A.2d 38, 42.

Today, 15 years after the decision in *Maryland Casualty*, and 32 years after the last substantive change in section 8—104, we now hold that the "plain language of the statute" requires those operating a motor vehicle for transportation of passengers to maintain omnibus coverage. (127 Ill. 2d at 238.) Because I believe the majority misapprehends the nature of the "initial permission doctrine," I must respectfully dissent.

The flaw in the majority's argument is evidenced by this court's decision in *United States Fidelity & Guaranty Co. v. McManus* (1976), 64 Ill. 2d 239. In *McManus* we stated that:

> "[w]e adhere to the view expressed in *Maryland Casualty* that where an insurer *elects* to include in its policy a broad provision extending liability coverage to persons operating or using a car with the permission of the owner, a further grant of permission from the initial permittee need not be shown in order to invoke the coverage." (Emphasis added.) (*McManus*, 64 Ill. 2d at 243.)

By using the word "elect," this court made clear in *McManus* that the initial permission doctrine, as adopted in *Maryland Casualty*, is a rule of contract construction. The rule is invoked when interpreting an omnibus provision contained in a private contract of insurance. As a rule of contract construction, there can be no doubt that even in the face of an omnibus provision, the parties

may contract to exclude coverage for certain permittees. *Economy Fire & Casualty Co. v. Pearce* (1979), 79 Ill. App. 3d 559, 564-65.

The majority now takes our 1973 decision in *Maryland Casualty*, which interpreted a *private contract* of insurance, and uses it to interpret a statutory provision passed 16 years earlier, in 1957. In essence, the rule of contract construction announced in *Maryland Casualty* has, by judicial legislation, been elevated to the level of substantive law.

As the majority states, a fundamental principle of statutory construction is to give effect to the intent of the legislature. (*In re Petition of the Village of Kildeer to Annex Certain Property* (1988), 124 Ill. 2d 533, 545.) Citing *Maryland Casualty*, the majority holds that the intent of the legislature in passing section 8–104 was to "mandate[] omnibus clause coverage." There is simply no way the legislature could have intended that section 8–104 mandate omnibus clause coverage when the concept was not even recognized in this State when the legislature passed the statute.

Whether the result reached in this case is desirable from a public policy standpoint is best left to the legislature. The majority's conclusion is unsupported by any evidence of legislative intent and conflicts with the terms of the policy at issue in this case. I would therefore reverse the decision of the appellate court and affirm the trial court's order granting summary judgment in favor of the plaintiff.

JUSTICE RYAN joins in this dissent.