First Division
May 8, 2006

No. 1-05-1869

| | |
|---|---|
| FOUNDERS INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) |
| | ) Appeal from |
| AMERICAN COUNTRY INSURANCE COMPANY, | ) the Circuit Court |
| | ) of Cook County |
| Defendant-Appellant and | ) |
| Counterdefendant | ) 03 CH 15278 |
| | ) |
| (Kwaku Dankyi Apau, | ) Honorable |
| | ) Julia M. Nowicki, |
| Defendant and Counterplaintiff, | ) Judge Presiding |
| | ) |
| Joseph N. Bingue, and Best Taxi Service, | ) |
| Inc., | ) |
| | ) |
| Defendants). | ) |

JUSTICE McBRIDE delivered the opinion of the court:

The defendant, American Country Insurance Company (American Country), appeals from the entry of summary judgment in favor of the plaintiff, Founders Insurance Company (Founders), and from the denial of its cross-motion for summary judgment. The main question on appeal is whether sections 8-101, 8-114 and 8-116 of the financial responsibility law applicable to Illinois taxicab companies (625 ILCS 5/8-101, 8-114, 8-116 (West 1998)) prevent a taxicab company's insurer, in this instance, American Country, from denying a claim for personal injuries caused by the negligent operation of a cab that was not specifically endorsed in the insurance contract. The trial court determined that the cited sections of the statute preempted contract language

indicating the cab company would be insured only for the vehicles it asked to be included in the policy.

The relevant facts are undisputed. American Country, of Chicago, Illinois, issued a written commercial transportation insurance policy to Best Taxi Service, Inc., of Evanston, Illinois (Best Taxi), which stated that under specified circumstances, American Country would pay for liability resulting from the ownership, maintenance or use of covered autos. Because the contract indicated the definition of "covered autos" applicable to Best Taxi was the seventh in a list of potential definitions, the coverage is sometimes referred to as symbol 7 coverage. The contract specified that under symbol 7 coverage, "covered autos" were only those vehicles "specifically described" in a schedule of vehicles attached to the contract and that subsequently acquired vehicles would be added to the policy only if Best Taxi notified American Country within 30 days of their acquisition. The schedule of vehicles attached to the contract specified the year, make, model, and unique Vehicle Identification Number (VIN) of 23 Chevrolets, Fords, and Lincolns in Best Taxi's fleet, and various endorsements were issued during the 12-month coverage period beginning January 1, 1999, to add or delete specific vehicles from the policy.

On February 20, 1999, at approximately 12:45 p.m., a Best Taxi cab that Joseph N. Bingue was driving northbound on Artesian Avenue in Chicago collided with a Honda Accord that Kwaku Dankyi

Apau was driving westbound at or near 2425 West Granville Avenue. A report filed with the local police department includes the make, model, year and VIN of the cab Bingue was operating. That cab, a 1991 Chevrolet station wagon, does not appear on the schedule of vehicles or any of the subsequent endorsements that added vehicles to the American Country policy.

Apau filed a personal injury suit in the circuit court of Cook County, was referred for arbitration, and obtained a default judgment against Best Taxi in the amount of $4,500 plus costs. When Apau contacted American Country about the judgment, American Country told him that it never endorsed the 1991 Chevrolet station wagon that was involved in the collision and that it was not liable for his judicially determined loss. Apau then submitted a claim for uninsured motorist benefits from his insurer, Founders, of Des Plaines, Illinois. Founders, however, wrote to the Illinois Department of Transportation (IDOT) seeking confirmation that the cab was insured on the accident date and was notified by the Department, "Taxi's [*sic*] are required to maintain an insurance filing with the Office of the Secretary of State before a license may be issued. Therefore, Joseph Bingue, operator and Best Taxi, owner of the vehicle are considered in compliance with the provisions of the Safety Responsibility Law."

Next, Founders filed this declaratory judgment action against the two drivers, the taxicab company, and the taxicab company's insurer. Founders sought a determination that Apau was

3

not entitled to uninsured motorist benefits from Founders because the American Country policy was in effect and Apau was not involved with an "uninsured motorist" within the meaning of the Founders policy. The insurance companies' cross-motions for summary judgment focused on whether American Country was attempting to enforce a contractual definition of "covered autos" that conflicted with sections 8-101 and 8-114 of the financial responsibility law that is applicable to taxicab companies. 625 ILCS 5/8-101, 8-114 (West 1998). Founders tendered a copy of the letter from IDOT indicating Bingue and Best Taxi "are considered in compliance with the provisions of the Safety Responsibility Law," and American Country provided the court with an affidavit from William J. Weiss, assistant vice president and general claims counsel of American Country, attesting that neither Best Taxi nor anyone acting on its behalf ever notified American Country that it wanted coverage for the 1991 Chevrolet station wagon.

Section 8-101 of the Illinois Vehicle Code states in relevant part:

> "Proof of financial responsibility --
> Persons who operate motor vehicles in
> transportation of passengers for hire. It is
> unlawful for any person, firm or corporation
> to operate any motor vehicle along or upon
> any public street or highway in any

4

incorporated city, town or village in this State for the carriage of passengers for hire, accepting and discharging all such persons as may offer themselves for transportation unless such person, firm or corporation has given, and there is in full force and effect and on file with the Secretary of State of Illinois, proof of financial responsibility provided in this Act. ***"  625 ILCS 5/8-101 (West 1998).

Section 8-114 of the Illinois Vehicle Code states:

"Issuance of license upon proof of financial responsibility.  The Secretary of State shall issue to each [taxicab company] who has in effect proof of financial responsibility as required by Section 8-101 ***, a certificate for each motor vehicle operated by such [taxicab company] and included within the proof of financial responsibility.  Each certificate shall specify the Illinois registration plate and registration sticker number of the vehicle, a statement that proof of financial responsibility has been filed, and the period for which the certificate was issued."  625

1-05-1869

ILCS 5/8-114 (West 1998).

In addition, section 8-116 of the Illinois Vehicle Code provides:

> "Any person who fails to comply with the provisions of this Chapter, or who fails to obey, observe or comply with any order of the Secretary of State or any law enforcement agency issued in accordance with the provisions of this Chapter is guilty of a Class A misdemeanor."  625 ILCS 5/8-116 (West 1998).

As indicated above, the trial court resolved the cross-motions in Founders' favor, stating:

> "Absent [sections 8-101, 8-114 and 8-116 of] the financial responsibility statute, there would be no question that since the 1991 Chevy [taxicab] is not a covered auto under the American Country policy, the loss would not be covered by the American Country policy.  However, when courts are faced with similar compulsory insurance statutes, conditions in the contract that would typically defeat a claim for coverage, 'although effective as between insurer and insured, cannot be asserted against third-

6

party claims' since the claimants are 'statutory beneficiaries whose rights cannot be defeated by the terms of the contract to which they are not parties.' *Great American Ins. Co. v. Brad Movers*, 65 Ill. App. 3d 357, 362 (1st Dist. 1978) [*(Brad Movers)*]. Thus, this Court finds that [the insurer] American Country is liable for the loss as to [the third-party claimant] Apau pursuant to the statute and [the insurer] must enforce its rights under the policy against the insured rather than the third-party claimant. *Id.*; see also [*American Country Insurance Co. v.*] *Wilcoxon*, [127 Ill. 2d 230, 239 (1989) (*Wilcoxon II*).]"

The court also denied American Country's subsequent motion to reconsider, emphasizing its conclusion that the purpose of the financial responsibility statute "is to 'insure that members of the public, injured through the negligence of cabdrivers driving cabs owned by others, are not left uncompensated for their injuries.' [*Wilcoxon II*, 127 Ill. 2d at 239]."

Neither court order, however, resolved a counterclaim Apau filed against American Country, in which he contended that if Founders prevailed in its declaratory judgment action, American Country should be held liable for the unsatisfied $4,500 judgment

he obtained against Best Taxi.  Accordingly, the court entered a Rule 304(a) finding so that immediate appeal could be taken.  155 Ill. 2d R. 304(a).

American Country now argues the summary judgment ruling should be reversed because the clear and unambiguous terms of its written policy indicated Best Taxi was insured only for vehicles specifically described in the contract, it is undisputed that the 1991 Chevrolet station wagon was never made part of the contract, and the terms of the contract are not in conflict with the cited sections of the financial responsibility statute and must be enforced as written.  Founders responds in part that the trial court's ruling was well reasoned and that *Wilcoxon II*, *Brad Movers*, and the cited statutory sections are not the only authorities supporting the decision.  *Wilcoxon II*, 127 Ill. 2d 230, *Brad Movers*, 65 Ill. App. 3d 357.  Thus, this appeal asks us to construe certain sections of the financial responsibility statute applicable to taxicab companies and relevant parts of the parties' insurance contract, in order to determine whether summary judgment was proper.

The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature.  *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 81 (1994).  The statutory language is the best indication of the legislature's intent, and when the language of a statutory provision is clear, a court must give it effect

without resorting to other aids for construction. *Solich*, 158 Ill. 2d at 81. Statutes are read as a whole and the words used are given their plain and ordinary meaning. *Country Mutual Insurance Co. v. State Farm Mutual Automobile Insurance Co.*, 339 Ill. App. 3d 78, 82 (2003). Similarly, when construing an insurance contract, the court's primary objective is to give effect to the intent of the parties at the time of contracting. *Continental Casualty Co. v. McDowell & Colantoni, Ltd.*, 282 Ill. App. 3d 236, 241 (1996). To ascertain the intent of the parties and the meaning of their insurance policy, the court construes the contract as a whole, with due regard to the risk undertaken, the subject matter that is insured, and the purposes of the entire contract. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108 (1992). If the words used in the policy are unambiguous, they must be given their plain, ordinary and popular meaning. *Outboard Marine*, 154 Ill. 2d at 108. The interpretation of a statute, the interpretation of an insurance contract, and the entry of summary judgment are all questions of law that are reviewed *de novo* without any deference to the trial court's interpretation. *O'Connor v. County of Cook*, 337 Ill. App. 3d 902, 906 (2003) (reviewing grant of summary judgment based upon interpretation of statute); *Continental Casualty*, 282 Ill. App. 3d at 241 (reviewing grant of summary judgment based upon interpretation of insurance contract).

Summary judgment is to be granted "without delay if the

pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  735 ILCS 5/2-1005(c) (West 2002); accord *Continental Casualty*, 282 Ill. App. 3d at 241; *Outboard Marine*, 154 Ill. 2d at 102.  Summary judgment is considered a drastic measure but is an appropriate means of expeditiously disposing of a lawsuit in which the right of the moving party is clear and free from doubt.  *O'Connor*, 337 Ill. App. 3d at 906; *Outboard Marine*, 154 Ill. 2d at 102.  Where reasonable persons could draw divergent inferences from undisputed facts, summary judgment must be denied.  *Outboard Marine*, 154 Ill. 2d at 102.

The trial court's ruling began with the premise that the sections of the financial responsibility law quoted above were intended to protect the public by securing payment for their damages.  In an instance where liability coverage was in force despite contract language to the contrary, the supreme court stated as follows:

> "It is axiomatic that a statute that exists
> for protection of the public cannot be
> rewritten through a private limiting
> agreement.  One reason for that rule is that
> 'the members of the public to be protected
> are not and, of course, could not be made
> parties to any such contract.'  [*Wilcoxon II*,

127 Ill. 2d at 241]. In accordance with these principles, a statute's requirements cannot be avoided through contractual provisions. Where liability coverage is mandated by the state's financial responsibility law, a provision in an insurance policy that conflicts with the law will be deemed void. The statute will continue to control. [*Wilcoxon II*, 127 Ill. 2d at 241.]

In evaluating whether statutory provisions override contractual terms, courts must remain mindful of principles of freedom of contract. The freedom of parties to make their own agreements, on the one hand, and their obligation to honor statutory requirements, on the other, may sometimes conflict. These values, however, are not antithetical. Both serve the interests of the public. Just as public policy demands adherence to statutory requirements, it is in the public's interest that persons not be unnecessarily restricted in their freedom to make their own contracts. The power to declare a private contract void as against

> public policy is therefore exercised
> sparingly.  [Citation.]  An agreement will
> not be invalidated on public policy grounds
> unless it is clearly contrary to what the
> constitution, the statutes or the decisions
> of the courts have declared to be the public
> policy or unless it is manifestly injurious
> to the public welfare.  Whether an agreement
> is contrary to public policy depends on the
> particular facts and circumstances of the
> case.  [Citation.]"  *Progressive Universal*
> *Insurance Co. of Illinois v. Liberty Mutual*
> *Fire Insurance Co.*, 215 Ill. 2d 121, 129-30
> (2005).

In this instance, however, although Best Taxi had a mandatory statutory obligation to obtain liability insurance for the vehicle Bingue was driving on February 20, 1999, the record does not show that Best Taxi complied with that obligation by first contacting and then contracting with an insurer for the coverage.  More importantly, there is no statute or case law obligating American Country to cover a vehicle that its client did not ask to be covered.  There is no Illinois statute or case law prohibiting the policy language that indicated "covered autos" were only those "specifically described" in the schedule of vehicles attached to the American Country policy and those

12

subsequently acquired vehicles that the insured had asked to be added to its policy.

Furthermore, the case the trial court primarily relied upon, *Wilcoxon II*, 127 Ill. 2d 230, addressed a section of the financial responsibility law that is not pertinent to the parties at issue or their contractual relationship. The case addressed section 8-104 of Illinois' financial responsibility law, rather than any of the three sections cited in the court's summary judgment order, which were sections 8-101, 8-114, and 8-116 of the financial responsibility law. See *Wilcoxon II*, 127 Ill. 2d at 234-43; see also *American Country Insurance Co. v. Wilcoxon*, 159 Ill. App. 3d 884 (1987) (*Wilcoxon I*).

Prior opinions have indicated that section 8-104 is the legislature's codification of the common law initial permission rule. *Wilcoxon I*, 159 Ill. App. 3d at 891; *Wilcoxon II*, 127 Ill. 2d at 238. Under the initial permission rule, which is referred to as omnibus clause coverage when incorporated into an insurance contract, once the named insured of an automobile insurance policy has given permission to another to use the car, any subsequent driver is covered as long as that driver did not engage in theft or tortious conversion to gain access to the car. *Wilcoxon II*, 127 Ill. 2d at 236, quoting *Maryland Casualty Co. v. Iowa National Mutual Insurance Co.*, 54 Ill. 2d 333, 342 (1973). The rule applies even if the first permittee exceeds the scope of permission by allowing a second permittee to drive the

13

insured car.  *Wilcoxon II*, 127 Ill. 2d at 236.

An illustrative case is *Maryland Casualty*, in which the named insured, Smythe, gave his son permission to drive the insured vehicle, and the son allowed a friend to drive it, despite his father's admonition that only family members were to drive the vehicle.  *Maryland Casualty*, 54 Ill. 2d at 337-38. While driving the Smythe car, the friend was involved in an accident in which two other people were injured.  *Maryland Casualty*, 54 Ill. 2d at 337.  The court found that the friend was covered under the Smythe insurance policy, due to the initial permission rule.  *Maryland Casualty*, 54 Ill. 2d at 342-43.  In effect, permitting the son to drive the vehicle gave the son implied authority to permit another to use the insured vehicle. See *Maryland Casualty*, 54 Ill. 2d at 339-40.  According to *Maryland Casualty*, the initial permission rule is " 'based on the theory that the insurance contract is as much for the benefit of the public as for the insured, and that it is undesirable to permit litigation as to the details of the permission and use.' "
 *Maryland Casualty*, 54 Ill. 2d at 342, quoting *Konrad v. Hartford Accident & Indemnity Co.*, 11 Ill. App. 2d 503, 514-15 (1956).

Section 8-104 incorporates the initial permission rule into certain situations by indicating that when a real estate bond has been obtained in lieu of automobile liability insurance, the "bond shall provide for the payment of each judgment by the owner of the motor vehicle *** provided each judgment shall have been

1-05-1869

rendered against such owner or *any person operating the motor vehicle with the owner's express or implied consent*." (Emphasis added.) 625 ILCS 5/8-104 (West 1998). The insurer in *Wilcoxon* had nevertheless attempted to negate section 8-104 by stating in its contract with the Checker Taxi Company (Checker) that the taxicab company could give express or implied consent only to its employees or lessees and that " 'the doctrine known as the Initial Permission Doctrine shall not apply.' " *Wilcoxon II*, 127 Ill. 2d at 233. After the policy was issued, one of Checker's drivers gave his friend permission to drive the cab, and the friend struck and injured a pedestrian with the vehicle. *Wilcoxon II*, 127 Ill. 2d at 233. Litigation ensued, and:

> "The court found that the initial permission doctrine applied *** because the 'protection of the public under financial responsibility statutes transcends the private agreement between the parties, where the agreement runs counter to sound public policy.' [Citation.] The court held that Checker, therefore, had given its constructive consent to [its driver] to permit [his friend] to operate the cab. The court further held that the Illinois legislature had codified the initial permission doctrine in section 8-104 of the Illinois Vehicle Code (Ill. Rev. Stat., 1983,

15

ch. 95 1/2, par. 8-104), and that Checker and its surety \*\*\* 'cannot, in a private agreement allegedly included in the bond rider, repeal or diminish the effect of the Illinois statute designed to protect the public' [citation]." *Wilcoxon II*, 127 Ill. 2d at 234-35.

Thus, the scope of *Wilcoxon II* was limited to the initial permission rule and section 8-104. 625 ILCS 5/8-104 (West 1998). The case is not a basis for finding that an automobile liability insurer must pay for damages caused by a vehicle that the insurer knew nothing about and never agreed to cover.

The supreme court revisited *Wilcoxon II* in a case we quoted extensively above regarding the judiciary's reluctance to interfere with the freedom to contract, *Progressive Universal*. In *Progressive Universal*, a mother allowed her son to use her insured minivan at his pizza delivery job, and the son struck and severely injured a pedestrian while making a delivery. *Progressive Universal*, 215 Ill. 2d at 124. The insurance policy expressly stated there would be no coverage for damages caused in the course of delivering food or any other products. *Progressive Universal*, 215 Ill. 2d at 125. Like the trial court in this instance, the appellate court found that the policy language was unambiguous, but that it conflicted with this state's mandatory

insurance laws, violated the public policy principles expressed in prior case law, and was, therefore, void and unenforceable. *Progressive Universal*, 215 Ill. 2d at 126-27.  On further appeal, however, the supreme court suggested that public policy should not have been used so readily to void a clear contract.  The supreme court emphasized that "whether a contractual agreement is void as against public policy ultimately depends on the particular facts and circumstances of each case."  *Progressive Universal*, 215 Ill. 2d at 133.  The supreme court differentiated between contracts that were enforceable even though they would not provide compensation for the facts and circumstances before the court, and contracts that were unenforceable because they conflicted with the initial permission rule or its statutory equivalent.  *Progressive Universal*, 215 Ill. 2d at 134.  The supreme court pointed out that there was no difference in the scope of coverage for the mother that owned the minivan or the son that drove the minivan with her permission:  "The exclusion applies with equal force to Ronald's mother, who is the named insured, and to anyone using her van with her permission.  Accordingly, if Ronald's mother used the van to deliver pizzas, she would have no more right to insist that [the insurer] defend and indemnify her than Ronald has.  The policy would provide no coverage."  *Progressive Universal*, 215 Ill. 2d at 134.  Therefore, the contract did not conflict with the statutory codification of the initial permission rule and "cannot be said

17

to be void as against public policy." *Progressive Universal*, 215 Ill. 2d at 134.  The supreme court also emphasized:

> "Had the General Assembly wished to bar insurers from excluding certain risks from motor vehicle liability policies, it could easily have so provided in the pertinent statutes.  It did not do so.  To the contrary, the Illinois Safety and Family Financial Responsibility Law clearly contemplates that exclusions may be included in policies and that those exclusions will be upheld.  That is why section 7-602 of the statute (625 ILCS 5/7-602 (West 2000) requires insurance cards to contain a disclaimer admonishing policyholders to '[e]xamine policy exclusions carefully.' " *Progressive Universal*, 215 Ill. 2d at 138.

The supreme court went on to point out that although the exclusion before it would shield the insurance company that issued the policy, "that does not mean that no insurer will be liable." *Progressive Universal*, 215 Ill. 2d at 139.  "Under the mandatory insurance law enacted by our General Assembly, the effects of policy exclusions are substantially offset by the requirement of uninsured-motorist coverage." *Progressive Universal*, 215 Ill. 2d at 139.  Thus, although the injured

pedestrian would not be able to "avail himself of the driver's liability coverage," he would "be entitled to seek payment under the uninsured-motorist provisions of his own motor vehicle policy." *Progressive Universal*, 215 Ill. 2d at 139-40. "In this way, the goal of protecting the public by securing the payment of its damages [is] fully achieved." *Progressive Universal*, 215 Ill. 2d at 140.

The supreme court further acknowledged that there will be instances in which neither driver complies with mandatory insurance laws and "injured parties will be left without coverage of any kind." *Progressive Universal*, 215 Ill. 2d at 140, n.3. Again, however, "[w]hether such 'gaps' in coverage should be addressed by the legislature and, if so, how they should be remedied, present important questions of public policy" to be addressed by the legislature, not the courts. *Progressive Universal*, 215 Ill. 2d at 140, n.3.

Although the specific statutory section cited in *Progressive Universal* is not applicable to the taxicab company that brought the instant appeal, there is an analogous statutory section that does apply. In section 8-114 of the Illinois Vehicle Code, which concerns those "who operate motor vehicles in transportation of passengers for hire" (625 ILCS 5/8-101 (West 1998)), the legislature signaled its expectation that not every vehicle in a taxicab fleet would be covered. The legislature did so by stating that the Secretary of State must issue a certificate to

each company that has shown proof of its compliance with financial responsibility law, and "[e]ach certificate shall specify the Illinois registration plate and registration sticker number of the vehicle, a statement that proof of financial responsibility has been filed, and the period for which the certificate was issued."  625 ILCS 5/8-114 (West 1998).  Further, the certificate must be "displayed upon a window of the motor vehicle for which it was issued, in such manner as to be visible to the passengers carried therein."  625 ILCS 5/8-115 (West 1998).  Therefore, American Country's requirement that "covered autos" be specifically listed either in the schedule of vehicles attached to the initial insurance contract or in endorsements issued during the coverage period is consistent with the legislature's expectations, and appears to be a prudent means of describing the scope of the insurer's liability.

The other case cited in the trial court's summary judgment order was *Great American Insurance Co. v. Brad Movers, Inc.*, 65 Ill. App. 3d 357, 362 (1978).  Since *Brad Movers* concerned a statutory scheme applicable only to warehouse operators, it has no relevance here and does not warrant any discussion.  See *Brad Movers*, 65 Ill. App.3d at 358-59 (court indicated the statute before it "requires a bond or insurance as a prerequisite to doing business as a public warehouseman in Illinois").

We have also disregarded Founders' reliance on *Illinois Casualty Co. v. Krol*, 324 Ill. App. 478 (1944), as that case

20

expressly concerns compulsory liability insurance required under the Illinois Truck Act (Ill. Rev. Stat. 1943, ch. 95 1/2, par. 253), which has no application here.

Founders urges this court to use section 18c-4903 of the Illinois Vehicle Code as a basis for affirming the trial court's summary judgment ruling, however that statute actually demonstrates the soundness of reversing the decision. Section 18c-4903 states:

> "Implied Terms of Insurance Coverage.
> Each certificate or other proof of insurance or surety coverage shall have, as an implied term, that the insurance or surety coverage will remain in effect continuously until notice of cancellation is filed in accordance with Commission regulations, and that all motor vehicles operated by or under authority of the carrier will be covered, *whether or not such vehicles have been reported to the insurance, surety, or other company*."
> Emphasis added. 625 ILCS 5/18c-4903 (West 1998).

Founders argues that because section 18c-4903 was in force and American Country "admittedly filed a certificate of insurance with the Illinois Secretary of State [citation], it is wholly irrelevant that the vehicle driven by Bingue, Best Taxi's agent,

1-05-1869

may not have been 'reported' to American Country." See 625 ILCS 5/18c-4903 (West 2002). However, as the statute itself suggests, it concerns certificates and notices of cancellation filed with the Illinois Commerce Commission, not certificates such as the one issued to Best Taxi by the Secretary of State. Furthermore, section 18c-4903 applies to "motor carrier[s] of property," such as trucking companies (see *Chambers v. Palaggi*, 88 Ill. App. 2d 221 (1967)), and it does not apply to taxicab companies "who operate motor vehicles in transportation of passengers for hire" (625 ILCS 5/8-101 (West 1998)). Therefore, section 18c-4903 is inapplicable to the present facts. The statute nevertheless is an indirect indication that the trial court's reasoning was flawed, because the statute is an example of what the legislature would have said if it wanted to obligate a taxicab company's insurer to cover all the vehicles in a fleet "whether or not such vehicles have been reported" to the insurer. 625 ILCS 5/18c-4903 (West 1998). Had the General Assembly wished to include implied terms of coverage in policies such as the present policy, it "could easily have so provided in the pertinent statutes. It did not do so." *Progressive Universal*, 215 Ill. 2d at 138. In fact, the General Assembly expressly requires that a multi-vehicle policy such as the present one "shall contain a description of each [covered] motor vehicle, giving the manufacturer's name and number and state license number." 625 ILCS 6/8-109 (West 1998).

For all these reasons, we now find that the clear,

22

unambiguous contract language put at issue by this appeal does not conflict with any statute or public policy grounds argued by the parties. Instead, due to "the mandatory insurance law enacted by our General Assembly[,] the effects of [the contract language] are substantially offset by the requirement of uninsured-motorist coverage." *Progressive Universal*, 215 Ill. 2d at 139. Due to the availability of Apau's mandatory uninsured motorist coverage within Founders, "the goal of protecting the public by securing the payment of its damages [will be] fully achieved." *Progressive Universal*, 215 Ill. 2d at 140. Accordingly, we reverse the trial court's entry of summary judgment for Founders and denial of American Country's cross-motion for summary judgment, and remand this cause for further proceedings consistent with this opinion as to Apau's cross-claim against Founders regarding his uninsured motorist coverage.

Reversed and remanded.

CAHILL, P.J., and GORDON, J., concur.