2025 IL App (1st) 240964-U

SECOND DIVISION
June 24, 2025

No. 1-24-0964 and 1-24-0968, cons.

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | |
|---|---|
| AXIS SURPLUS INSURANCE CO., | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| ALLIED WORLD ASSURANCE COMPANY; ONNI HUDSON, LLC; and ONNI CONTRACTING (CHICAGO), INC., | ) ) |
| | ) |
| Defendants-Appellees. | ) |
| ——————————————————————— | ) Appeal from |
| | ) the Circuit Court |
| NAVIGATORS SPECIALTY INSURANCE CO., | ) of Cook County |
| | ) |
| Plaintiff-Appellant, | ) 22CH9376 |
| | ) |
| v. | ) Honorable |
| | ) Michael T. Mullen, |
| ONNI CONTRACTING (CHICAGO), INC.; ONNI HUDSON LLC; HOUSTON CASUALTY COMPANY; and ALLIED WORLD ASSURANCE COMPANY, | ) Judge Presiding ) ) |
| | ) |
| Defendants-Appellees, | ) |
| | ) |
| and | ) |
| | ) |
| USA HOIST COMPANY, INC., | ) |
| | ) |
| Intervenor-Defendant/Counter-Plaintiff-Appellee. | ) |

1-24-0964 and 1-24-0968, cons.

JUSTICE McBRIDE delivered the judgment of the court.
Justices Howse and Ellis concurred in the judgment.

**O R D E R**

¶ 1     *Held*: Summary judgment against commercial general liability and excess liability insurers affirmed where condition was met for general contractor to be an additional insured on subcontractor's polices and where exclusions to that coverage did not apply.

¶ 2     In this insurance coverage dispute, the commercial general liability insurer ("CGL") and the excess insurer of a construction project's subcontractor attempt to recover $7 million that they contributed to the settlement of a negligence suit. The negligence plaintiff was one of the subcontractor's employees, Steven Szilva, who sustained severe injuries at the construction site. Szilva v. Onni Contracting (Chicago), Inc., No. 16-L-9688 (Cir. Ct. Cook County)). Szilva's $17 million settlement was funded by the two appellant insurers of the subcontractor and the two appellee insurers of the general contractor and project owner, all of whom agreed to reserve and pursue their coverage positions separately from the settlement. One declaratory judgment action was filed by the subcontractor's excess insurer, AXIS Surplus Insurance Company ("AXIS") (22-CH-9376 (Cir. Ct. Cook County)), which contends that the circuit court erroneously rejected two coverage exclusions that should have left liability with the general contractor and project owner. Another declaratory judgment action was filed by the subcontractor's CGL insurer, Navigators Specialty Insurance Company ("Navigators") (No. 18-CH-15247 (Cir. Ct. Cook County)), which contends that the circuit court (1) misconstrued subcontract language that did not actually trigger "Additional Insured" coverage to the general contractor and project owner and (2) erroneously found that Navigators was estopped from adopting the exclusions that AXIS was relying upon. The two declaratory judgment actions were consolidated in the circuit court and the insurers' separate appeals (1-24-0964 and 1-24-0968) were consolidated here. The rulings that are

challenged (1) resolve cross-motions for summary judgment against the subcontractor's insurers and conclude that they have a duty to indemnify the general contractor and project owner and (2) strike Navigators' supplemental motion to adopt AXIS' arguments regarding the exclusions. Briefs have been filed by each of the four insurers and the two insureds.

¶ 3        Szilva was a 34 year old ironworker in 2016 who was employed in Chicago by USA Hoist Company, Inc. ("USA Hoist"). USA Hoist was in the business of providing custom construction elevators for mid-, high-, and super-high-rise construction. An accident occurred during the construction of a high-rise building known as The Hudson, at 750 North Hudson Avenue. Szilva sued The Hudson's general contractor, Onni Contracting (Chicago), Inc.; the project's owner, Onni Hudson, LLC (collectively "Onni"); and other entities. In his second amended complaint, Szilva alleged that while he was working on top of an elevator hoist installing slow down limits, a second hoist was suddenly elevated without warning, which caused its counterweight to come down and sever his arm from his body. Szilva's claims against Onni included negligent control over construction work; premises liability; failure to require union operators to operate the hoists and follow protocol; negligent inspection and safety measures and failure to warn. His wife claimed loss of consortium.

¶ 4        Onni had obtained a primary owner controlled insurance program or "wrap-up" insurance coverage[1] from appellee Houston Casualty Company ("Houston Casualty") and an excess liability policy from appellee Allied World Assurance Company (U.S.), Inc. ("Allied World") which

---

[1] Construction wrap-up insurance is obtained by either a project owner or a general contractor to provide uniform coverage for all the contractors. See *e.g.*, *Illinois Insurance Guaranty Fund v. Virginia Surety Co., Inc.*, 2012 IL App (1st) 113758, ¶ 7. One of the benefits of wrap-up coverage is its reduced overall cost. *Id.*

covered that time period. Subcontractor USA Hoist was a named insured on a CGL policy that Navigators had issued to Mid-American Elevator Company, Inc. and a named insured on the elevator company's excess coverage from AXIS.

¶ 5    Onni chose to "target tender" Szilva's lawsuit to Navigators for coverage as an additional insured on the USA Hoist policy. The "targeted tender rule" allows an insured that is covered by multiple concurrent insurance policies to select which insurer(s) will defend and indemnify it with respect to a specific claim. *Kajima Construction Services, Inc. v. St. Paul Fire & Marine Insurance Co.*, 227 Ill. 2d 102, 105 (2007). It is undisputed that to be considered an "Additional Insured" within the meaning of certain endorsements to the Navigators policy, the putative additional insured must have entered into a written agreement with a named insured requiring that the person or organization be added as an additional insured on the policy. Navigators refused Onni's targeted tender, with its stated reason being that the construction subcontract between Onni and USA Hoist did not require that Onni be an additional insured on the Navigators policy. Navigators took the same position in its declaratory judgment action against Onni and Onni's two insurers, Houston Casualty Company ("Houston Casualty") and Allied World Assurance Company ("Allied World"), and the same position in the cross-motions for summary judgment that are at issue on appeal.

¶ 6    According to Navigators, but not persuasive to the circuit court, the following Onni-USA Hoist subcontract language did not trigger the additional insured coverage from Navigators because it can only be read as referencing a single, irrelevant workers' compensation policy:

"Please proceed with the supply and installation of all construction hoist equipment for the above noted project as per various meetings, discussions, email correspondence, your

emailed quote dated February 15, 2016 and the following terms and conditions:

\* \* \*

17. Provide copy of insurance policy, workers compensation policy.

Policy to add: (The Hudson) and Onni Contracting (Chicago) Inc. as additional named insureds."

¶ 7    Thus, the first issue we address is the meaning of paragraph 17. The primary goal of contract interpretation is to give effect to what the parties intended when they entered into the agreement. *Founders Insurance Co. v. American Country Insurance Co.*, 366 Ill. App. 3d 64, 69 (2006); *Owens v. McDermott, Will & Emery*, 316 Ill. App. 3d 340, 344 (2000). A court will first look "to the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent." *Gallagher v. Lenart*, 226 Ill. 2d 208, 233 (2007); *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011). A court will not interpret a contract in a way that nullifies some part of it or renders any of it superfluous. *Gordon*, 241 Ill. 2d at 442. A contract should be given a reasonable construction and every part of it should be considered and given effect, if possible. *R.F. Conway Co. v. City of Chicago*, 274 Ill. 369, 376 (1916); *Owens*, 316 Ill. App. 3d at 344. "Moreover, because words derive their meaning from the context in which they are used, a contract must be construed as a whole, viewing each part in light of the others." *Gallagher*, 226 Ill. 2d at 233; *Thompson*, 241 Ill. 2d at 441. "The intent of the parties is not to be gathered from detached portions of a contract or from any clause or provision standing by itself." *Gallagher*, 226 Ill. 2d at 233. In addition, because "[a] contract does not exist in a vacuum; its terms must be understood in light of the commercial context within which it was drawn." *Fleet Business Credit, LLC v. Enterasys Networks, Inc.*, 352 Ill. App. 3d 456, 469 (2004); *Archer-*

1-24-0964 and 1-24-0968, cons.

*Daniels-Midland Co. v. Illinois Commerce Comm'n*, 184 Ill. 2d 391, 400 (1998).

¶ 8        We review a summary judgment ruling *de novo*. *Founders Insurance*, 366 Ill. App. 3d at 69. The construction of an insurance policy and a determination of the parties' rights and obligations are questions of law that are proper subjects for disposition by summary judgment. *Id*. Entering summary judgement is a drastic measure, but a measure that expeditiously disposes of a lawsuit in which the right of the moving party is clear and free from doubt. *Id*. at 70. Summary judgment is to be rendered without delay where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, when viewed in the light most favorable to the nonmoving party, indicate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2020).

¶ 9        Relying on rules of grammar and certain Illinois cases, Navigators contends that the comma before the phrase "workers compensation policy" in paragraph 17 signifies a clarification/ specification as to the type of "insurance policy" that USA Hoist was agreeing to reproduce and give to Onni; and that if the intention had been to describe two policies instead of one, then the word "and" would have been employed instead of punctuation. Navigators argues that this is confirmed by the next line of paragraph 17, where the singular and unidentified "Policy" refers back to the singular "workers compensation policy." Further confirmation comes from the subcontract as whole in which USA Hoist did not agree to defend and indemnify Onni, which is a provision that Navigators contends contracting parties would typically incorporate when one party is required to name another party as an additional insured. Navigators concludes that this is the only reasonable way to read paragraph 17. We do not, however, find any of this argument persuasive.

¶ 10     Navigators' proposed reading would make some of Onni and USA Hoist's very succinct subcontract superfluous. Their agreement is on the letterhead of Onni Contracting (Chicago), Inc., is only slightly longer than three pages, and consists of short, numbered statements that resemble more of an informal list than a wordsmithed legal document. The first sentence of paragraph 17 states "Provide copy of insurance policy, workers compensation policy." The next sentence states "Policy to add: (The Hudson) and Onni Contracting (Chicago) Inc. as additional named insureds." In our opinion, the only reasonable reading of this paragraph is that in the first line, Onni was requiring USA Hoist to provide copies of its liability insurance policy and its workers compensation policy and, in the second line, to list Onni as an additional insured on its liability policy. The first line must be listing two different policies, because if it were read as referring to the same, single policy, then either the phrase "insurance policy" or the phrase "workers compensation policy" would be redundant and unnecessary. It is contrary to sound principles of contract interpretation to disregard any of the parties' language. *See Thompson*, 241 Ill. 2d at 442 (a court "will not interpret a contract in a manner that would nullify or render provisions meaningless"). "It is presumed the provisions are purposefully inserted and the language is not employed idly." *Coles-Moultrie Electric Cooperative v. City of Sullivan*, 304 Ill. App. 3d 153, 159 (1999). This principle seems particularly relevant when Onni and USA Hoist agreed to a terse, commercially-expedient list of terms, rather than a detailed narrative of requirements. Although Navigators emphasizes that the parties twice used the singular term "policy" instead of the plural term "policies," the parties were listing two different insurance contracts.

¶ 11     Furthermore, the only reasonable interpretation of the word "policy," in the phrases "Provide copy of insurance policy," and "Policy to add" is that it means a third-party CGL policy,

given the nature of the services that USA Hoist, a subcontractor, was to provide to Onni, a general contractor and project owner. It would have been reasonable of Onni to require that it be named as an additional insured on its subcontractor's CGL policy, since the very purpose of additional insured coverage is to protect the additional insured from third-party liability, such as when a general contractor is sued by a subcontractor's employee. *Virginia Surety Co., Inc. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 557 (2007) ("An injured employee may also have a cause of action against a third party to the employment relationship, such as a general contractor, whose negligence allegedly caused or contributed to the employee's injuries."). In *American Country Insurance Co. v. James McHugh Construction*, 344 Ill. App. 3d 960, 963 (2003), the court acknowledged that when a subcontractor's employees become injured, it is "common practice for them to sue the general contractor involved with the project," because the Illinois workers' compensation statute (820 ILCS 305/5(a) (West 2016)) bars those workers from suing their own employers. The statute does not limit the workers' recovery from third parties such as Onni. *Virginia Surety*, 224 Ill. 2d at 557. "In realization of that possibility, general contractors will usually set up insurance requirements for their subcontractors, with the intent of passing the liability for worker injuries along to the worker's employer's insurance carrier." *American Country*, 334 Ill. App. 3d at 963. *See also Fleet Business Credit*, 352 Ill. App. 3d at 469 (a contract "must be understood in light of the commercial context within which it was drawn"); *Archer-Daniels-Midland*, 184 Ill. 2d at 400 (benefits of restructuring a procurement contract were not contemplated in a vacuum). Under the circumstances, Onni would certainly want a copy of the liability policy in order to confirm its status as an additional insured.

¶ 12     It also would have been reasonable for Onni to require USA Hoist to obtain a workers'

compensation policy for USA Hoist's own use and provide a copy of that policy to Onni because the construction project was in Illinois, and Illinois requires employers to have workers' compensation insurance. See 820 ILCS 305/1(a)(3) (West 2016). Onni would want proof that USA Hoist was covered, because under the law, if a subcontractor fails to obtain workers' compensation coverage and one of its employees is injured, then the general contractor must pay the compensation benefits *and* is not immunized from an action for damages. *Munoz v. Bulley & Andrews, LLC*, 2022 IL 127067, ¶¶ 26-28 (citing *Laffoon v. Bell & Zoller Coal Co.*, 65 Ill. 2d 437 (1976)). Moreover, we could foresee that even if no compensation claims had arisen but the general contractor's insurer audited The Hudson construction project, then the insurer would want to count USA Hoist's uninsured workers as Onni's direct employees and charge Onni a corresponding insurance premium for them. *See Pekin Insurance Co. v. Campbell*, 2015 IL App (4th) 140955, ¶ 5 (indicating that the final premium amount for workers' compensation coverage was based on the audited number of employees that the insured had employed during the policy period).

¶ 13    In contrast, it would have been *un*reasonable if paragraph 17 required USA Hoist to name Onni as an additional insured on USA Hoist's workers' compensation policy. This policy provides first-party coverage to USA Hoist for injuries suffered by USA Hoist's employees. Workers' compensation insurance protects an employer that may be statutorily liable to its employees under state workers' compensation laws. *See Virginia Surety*, 224 Ill. 2d at 556-57; *see also* 9A Couch on Ins. § 133:25 (3d ed. Supp. 2022) ("The parties to the contract of workers' compensation and employer's liability insurance are the employer and the insurer."). Onni did not directly employ any of USA Hoist's employees and, therefore, provided USA Hoist obtained coverage, Onni would not be liable under Illinois' workers' compensation laws (*see* 820 ILCS 305/1(a)(3) (West 2016))

and it would have no reason to require its addition to its subcontractor's workers' compensation coverage. Furthermore, the record shows that USA Hoist was one of nearly 100 subcontractors that took part in The Hudson's construction. Requiring each subcontractor to add Onni to its workers' compensation coverage would not only be unnecessary under Illinois law, it would greatly increase the overall cost of Onni's project. Nor does it seem likely that a workers' compensation carrier would agree to allow a separate, unrelated entity to be added as an additional insured because doing so would provide coverage for the additional insured's entire workforce, which would be a significant increase in the insurer's risk. See *Pekin Insurance*, 2015 IL App (4th) 140955, ¶¶ 5-6 (in which workers' compensation insurer sought to rescind policy on grounds that insured had misrepresented number of employees and thus misrepresented the risk presented to insurer). Thus, it would have been commercially unreasonable to require USA Hoist, a subcontractor, to add Onni, a general contractor, as an additional insured on USA Hoist's workers' compensation policy. Navigators' way of reading paragraph 17 makes no sense.

¶ 14     Navigators' interpretation of paragraph 17 also fails to resolve the fact that this clear, concise contract uses inconsistent grammar. For example, paragraph 18 states "[p]rovide copy of material data safety sheets (MSDS) if applicable," but the very next paragraph, paragraph 19, states "[p]rovide a copy of company safety policy to Onni prior to the start of work, if applicable." Thus, in two sequential provisions, the subcontract inconsistently uses an "a" and a comma in the phrases "[p]rovide copy" versus "[p]rovide *a* copy" (emphasis added) and in the phrases "(MSDS) if applicable" versus "start of work, if applicable." Another example of inconsistent grammar is that the paragraph at issue, paragraph 17, is one of three paragraphs in a row that does not include an express subject–the inferred subject is the subcontractor–while other paragraphs do specify that

the actor is the subcontractor or the main contractor. More specifically, paragraphs 17, 18, and 19 are incomplete sentences that all begin with either "Provide copy" or "Provide a copy" and the inferred subject of these statements is subcontractor USA Hoist. In contrast, paragraph 23 is the start of nine sequential paragraphs that specify, "The subcontractor shall," "The subcontractor will," or "The subcontractor [is] to" do certain things. In other words, the subcontract is a mix of incomplete and complete sentences. There is also inconsistency in how Onni is named throughout the document that it drafted. At some points it is "Onni Contracting (Chicago), Inc.," at others it is "Onni," and in still other places, it is "Prime Contractor." Paragraph 1, for instance, uses the long form, stating: "All orders must be accompanied by an Onni Work Order number, provided by Onni Contracting (Chicago), Inc. ('Onni')," and Paragraph 4 then uses the short form: "Invoices must be received at Onni's head office no later than the 25th day of the current month ***." However, paragraph 5 reverts to the full proper name, stating, "Onni Contracting (Chicago) Inc. has no obligation to provide payment for the Work to any person/entity other than as identified in this section." This is followed by paragraph 6's use of the shorthand, "Onni accepts invoices via email." Then, instead of either the shortened "Onni" or the longer proper name, the term "Prime Contractor" or "Prime contractor" is employed in paragraphs 21, 25, 32, and 39. We point out the drafter's inconsistent grammar and word choices, not because they create ambiguity (they do not), but because they illustrate that Navigators reads too much into the minutiae of paragraph 17's grammar when it insists that the comma in "Provide copy of insurance policy, workers compensation policy," signifies a clarification rather than separation in a list.

¶ 15    After reading the subcontract as a whole, and considering its purposes and the surrounding circumstances, it is apparent to us that paragraph 17's first sentence, "Provide copy of insurance

policy, workers compensation policy," is not a statement about one item, followed by a clarifying description. This is a series of two requirements that are separated by a comma. For all the reasons discussed above, this sentence does not refer only to USA Hoist's workers' compensation insurance policy, as Navigators argues, it instead describes a CGL policy *and* a workers' compensation policy.

¶ 16 Therefore, the "policy" in the second sentence of paragraph 17, "Policy to add: (The Hudson) and Onni Contracting (Chicago) Inc. as additional named insureds," can only refer to USA Hoist's CGL policy, here, the Navigators CGL, and mean that USA Hoist was required to add Onni as an additional insured on that policy. Paragraph 17 satisfies Navigators' requirement that to be considered an "Additional Insured" within the meaning of certain endorsements to the policy, the putative additional insured must have entered into a written contact with a named insured that mandates that the person or organization will be added as an additional insured.

¶ 17 Navigators' counterarguments are ineffective. For instance, Navigators cites *Dildine v. Hunt Transportation, Inc.*, 196 Ill. App. 3d 392 (1990), to suggest that it is conceivable that a contractor might want to be added to its subcontractor's workers' compensation policy. But *Dildine* addressed whether two subsidiaries were joint employers for purposes of workers' compensation exclusivity. *Dildine*, 196 Ill. App. 3d at 393. In analyzing the joint employer issue, the court noted many facts about their shared arrangements, including that one of the entities was an additional insured on the other's workers' compensation policy. *Id.* USA Hoist and Onni are not sister subsidiaries or otherwise affiliated entities. In addition, there is neither a joint employer issue here, nor any allegation that any entity but USA Hoist employed Szilva. *Dildine* is simply inapposite and does not lend support to Navigators' unreasonable interpretation of paragraph 17.

- 12 -

¶ 18    Navigators' citation to *Gadelhak v. AT&T Services, Inc.*, 950 F.3d 458 (7th Cir. 2020), only highlights how inappropriate it is to read too much into paragraph 17's grammar. Navigators cites a passage in which the court indicates that the use of a comma was a "deliberate drafting choice to separate the modifying clause from the words that immediately precede it." *Id*. at 468. The lengthy opinion analyzes the use of a comma in the federal Telephone Consumer Protection Act (47 U.S.C. § 227(b)(1) (1992)), and the court acknowledged that rules of grammar did not provide a complete understanding of the drafter's intent. *Gadelhak*, 950 F.3d at 460, 464, 468. It stated, for instance, "The wording of the provision that we interpret today is enough to make a grammarian throw down her pen." *Gadelhak*, 950 F.3d at 460. Also, "we are mindful that 'a purported plain-meaning analysis based only on punctuation is necessarily incomplete and runs the risk of distorting a statute's true meaning.' We tread especially carefully here, since the comma seems to be ungrammatical under any interpretation." *Gadelhak*, 950 F.3d at 468 (quoting *U.S. National Bank of Oregon v. Independent Insurance Agents of America, Inc.*, 508 U.S. 439, 454 (1993)).

¶ 19    Navigators also misreads *West Bend Mutual Insurance Co. v. Athens Construction Co.*, 2015 IL App (1st) 140006, and *United Stationers Supply Co. v. Zurich American Insurance Co.*, 386 Ill. App. 3d 88 (2008), to argue that paragraph 17 does not require USA Hoist to add Onni as an additional insured on the Navigators policy. Navigators points out that both cases involved (1) construction contracts where one party argued that the other party was required to add it as an additional insured to a CGL policy, and (2) insurance policy endorsements that provided for "Additional Insured" status when the named insured was required to add an entity as an additional insured pursuant to a written contract. While both cases have some passing factual similarity to

the present dispute, they are distinguishable. The agreement in *West Bend Mutual*, 2015 IL App (1st) 140006, ¶¶ 6-7, required a plumbing subcontractor to name the general contractor as an additional insured on a certificate of insurance but did not require the subcontractor to name the general contractor as an additional insured on its liability policy. The subcontract here does not mention any certificate of insurance. Rather, paragraph 17's "Policy to add: (The Hudson) and Onni Contracting (Chicago) Inc. as additional named insureds," requires USA Hoist to add Onni as an additional insured to its general commercial liability insurance coverage, *i.e.*, the Navigators policy. Similarly, in *United Stationers Supply*, 386 Ill. App. 3d at 90-91, the building owner did not qualify as an additional insured because its contract with a roofing contractor contained a list of the types of insurance under which the putative additional insured was to be named as an additional insured, but that list did not include a general liability policy. Furthermore, there was no extrinsic evidence demonstrating that the parties intended to include the putative additional insured as an additional insured under the general liability policy. *Id.* at 104-05. Here, the subcontract requires USA Hoist to secure a policy and that Onni be added as an additional insured on *that* policy. Again, the only reasonable interpretation of the word "policy," given the nature of the services USA Hoist, a subcontractor, was to provide to Onni, a general contractor, is that it means a third-party general liability policy.

¶ 20    In its appellate response brief, Onni's excess wrap-up insurer, Allied World, emphasizes that when discussing these two cases and *Pekin Insurance Co. v. Pulte Home Corp.*, 404 Ill. App. 3d 336 (2010), Navigators incorporates requirements that do not exist in the endorsements at issue. Navigators complains that the Onni subcontract does not contain an indemnification provision; does not specifically mention Navigators by name; does not specify the amount of insurance USA

Hoist must obtain; and that the Navigators CGL policy was not specifically endorsed to include Onni as an additional insured. However, Navigators' endorsements do not require that the parties' written contract contain an indemnification clause, specify the amount of insurance, or refer to Navigators in particular by name. All that is required by the Navigators policy is a written agreement to name the putative additional insured as an additional insured on USA Hoist's policy. In addition, the Navigators policy contemplates that a written agreement to add an additional insured might be silent as to the amount of insurance required, because the policy amends the limits-of-insurance section of the Navigators CGL policy such that the coverage provided is the lesser of the amount required by the contract or the amount stated in the declarations. If Navigators wanted to require that the underlying subcontract include an indemnification provision or a specific reference to the policy limits or refer to Navigators by name, then Navigators could have drafted its insurance contract accordingly.

¶ 21　　Despite Navigators' arguments, the plain terms of paragraph 17 require USA Hoist to add Onni as an additional insured to the Navigators CGL policy and Onni qualifies as Navigators' additional insured.

¶ 22　　Because the contract is unambiguous, we do not reach Navigators' alternative argument that if the subcontract is ambiguous, then it must be construed against the drafter, Onni, instead of a nonparty to the document. The contract is clear and simply contrary to Navigators' interpretation. The fact that the parties disagree about the meaning of the contract does not render it ambiguous. *Fleet Business Credit*, 352 Ill. App. 3d at 469.

¶ 23　　Similarly, we do not reach Navigators' alternative argument in which it opposes the use of extrinsic evidence that was filed in opposition to the declaratory judgment action, such as

deposition statements that the subcontracting parties made in 2020 after the action was on file, stating that it was their intent that USA Hoist add Onni as an additional insured to the Navigators policy. The contract language speaks for itself and it has not been necessary to consider extrinsic evidence in order to clarify what it means. *Id.* (indicating that when an agreement is reduced to writing, it is presumed to speak the intention of the parties).

¶ 24   Navigators' primary appellate contention that it did not owe Onni duties to defend and indemnify on a primary basis has been unpersuasive. Onni was an additional insured on USA Hoist's contract with Navigators.

¶ 25   Navigators' declaratory judgment action was consolidated with the declaratory judgment action that was filed by USA Hoist's other insurer, AXIS, regarding its duties with respect to the Szilva suit. The AXIS policy was a "form following" excess policy that followed the terms, conditions, and exclusions and endorsements of the primary underlying CGL policy issued by Navigators.[2] Navigators' second main appellate argument is that it was error to strike its joinder in AXIS' motion for summary judgment in which AXIS asserted two exclusions from the Navigators policy. We are setting aside Navigators' argument about the treatment of its joinder motion until after we have resolved AXIS' arguments about the efficacy of the two exclusions.

¶ 26   AXIS' declaratory judgment action named The Hudson's general contractor and the project owner, whom we have been referring collectively to as Onni, and also named Onni's excess wrap-

---

[2] Under "INSURING AGREEMENT," the AXIS policy states: "1. *The coverage provided* by this policy is excess insurance and, except as otherwise stated in this policy, *follows* the terms, conditions, exclusions, and endorsements of the 'first underlying insurance' shown in Item 8. of the Declarations. Further, this policy *will follow* any additional exclusions included in the 'underlying insurance.' Under no circumstances will this coverage be broader than any 'underlying insurance.' " Emphasis added.

up insurer, Allied World. AXIS alleged and sought summary judgment that Onni's own project specific wrap-up insurance from Houston Casualty and Allied World that covered the Szilva suit triggered two exclusions in the Navigators policy, and that AXIS benefitted from those exclusions because it was a following-form excess insurer. The circuit court, however, rejected AXIS' interpretation of the exclusions, resolved the cross-motions for summary judgment against AXIS, and ruled that it had a duty to defend and indemnify Onni for the settlement of the Szilva lawsuit.

¶ 27    Here, AXIS argues there is no coverage for Onni due to those two exclusions. The first exclusion applies to "COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (SECTION I – COVERAGES)" and is entitled "EXCLUSION - DESIGNATED ONGOING OPERATIONS." Under the heading "SCHEDULE," this exclusion states: "Description of Designated Ongoing Operation(s): *** All work insured elsewhere under project specific policies." The exclusion then states, "This insurance does not apply to 'bodily injury' or 'property damage' arising out of the ongoing operations described in the Schedule of this endorsement, regardless of whether such operations are conducted by you or on your behalf or whether the operations are conducted for yourself or for others." We will refer to this as the "designated operations exclusion." The second exclusion also applies to "COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (SECTION I – COVERAGES)." It is entitled "EXCLUSION - OPERATIONS COVERED BY A CONSOLIDATED (WRAP-UP) INSURANCE PROGRAM." The exclusion states in relevant part, "This insurance does not apply to 'bodily injury' or 'property damage' arising out of your ongoing operations *** when a consolidated (wrap-up) insurance program has been provided for such operations." We will refer to the second exclusion as the "wrap-up exclusion." The obvious intent of these exclusions is to

avoid paying for losses that are covered by other insurance.

¶ 28    AXIS' initial argument is that the court wrongly concluded that AXIS, as an excess insurer, "is obligated to *defend and* indemnify Onni Contracting (Chicago), Inc. and Onni Hudson, LLC." (Emphasis added.) "[P]rimary insurers have a duty to defend the insured because liability for a primary insurer attaches immediately upon the occurrence creating the liability for the insured, whereas liability for an excess insurer occurs only after a predetermined amount of primary insurance has been exhausted." *Central Illinois Public Service Co. v. Agricultural Insurance Co.*, 378 Ill. App. 3d 728, 731 (2008); *American States Insurance Co. v. Liberty Mutual Insurance Co.*, 291 Ill. App. 3d 336, 339, 683 N.E.2d 510, 512 (1st Dist. 1997) (primary insurers have a duty to pay defense costs, and excess insurers are not liable to pay defense costs before the conclusion of the underlying suit). AXIS contends the error occurred even though no party pled or argued that AXIS had a duty to defend, the error "may have colored" the court's other "flawed" conclusions, and it is sufficient reason alone to reverse the judgment on appeal.

¶ 29    In its complaint, however, AXIS did plead that it had no duty to defend or indemnify Onni in connection with the Szilva matter, stating:

> "47. Based upon the allegations of the Tort Lawsuit, the terms of the [Allied World] Policy and Houston Policy, and the terms of the AXIS Policy, AXIS had no duty to defend or indemnify [Onni Contracting (Chicago), Inc.] or Hudson [*(sic)*] in connection with the Settlement and AXIS provided no coverage for the claims related to the Tort Lawsuit."

¶ 30    Furthermore, at the summary judgment hearing on April 1, 2024, AXIS' counsel was present and did not object when the court said, "The Court further declares that AXIS has a duty to defend as well as indemnify Onni for the underlying settlement." The written order at issue was

entered later that day. Thus, AXIS' suggestion that the phrase "defend and" was uninvited and unexpected is disingenuous.

¶ 31    Furthermore, even if we assume that the court included the phrase by mistake, there is no apparent consequence to its inclusion, because (1) on June 23, 2021, the court ruled that Navigators (not AXIS) had a duty to defend Onni in connection with the Szilva lawsuit on a primary, non-contributory basis, (2) Navigators reimbursed Houston Casualty and Onni and paid defense counsels' subsequent invoices, and (3) in the April 1, 2024 order on appeal, the court specified that Navigators was not entitled to reimbursement or other recovery of the defense costs and settlement amount it paid, and that no insurance company or other party was unjustly enriched as a result of the defense costs or settlement amount it paid. Thus, all of the defense courts were and will be born by Navigators, not AXIS. The court's statement did not have any financial impact on AXIS' defense costs and it does not suggest that the court misapprehended AXIS' duty about its settlement costs. AXIS' concern that the phrase about defense costs "may have colored" the court's ruling about AXIS' indemnity obligation is a far reach and we reject it.

¶ 32    AXIS' primary argument is that the designated operations exclusion bars coverage for Onni because it excludes "All work insured elsewhere under project specific policies" and Onni's work was insured under project-specific policies issued by Houston Casualty and Allied World. AXIS, thus, focuses on the term "all" or the phrase "[a]ll work" and does not distinguish between whether Szilva's work was for Onni or for USA Hoist. AXIS disregards the distinction entirely when it states that it is "undisputed" that Szilva was injured "while he was working at the construction site *** and, therefore [his injury] arose out of the Project," and "undisputed" that "the work performed at the Project was insured by Onni's project specific policies," thus, the exclusion was triggered.

¶ 33    However, when we give the policy language its plain and ordinary meaning (*Gallagher*, 226 Ill. 2d at 233; *Thompson*, 241 Ill. 2d at 441), the designated operations exclusion expressly applies only to " 'bodily injury' arising out of the ongoing operations described in the Schedule" and the schedule describes the ongoing operations as "[a]ll work insured elsewhere under project specific policies." The critical policy language is not "[a]ll" or "[a]ll work" as AXIS argues, but "arising out of." In this context, "arising out of" is narrower than "[a]ll" and must be given effect. The bodily injury must arise out of work that is insured elsewhere under project-specific policies. The question becomes whether Szilva's " 'bodily injury' " arose out of Onni's work or USA Hoist's work. The circuit court rejected AXIS' interpretation, reasoning that Szilva's injury did not arise out of Onni's work, as Onni was the general contractor for the project and did not perform any work on the project, and Szilva's injury arose out of his employer's work and his employer was not otherwise insured elsewhere. The policy and record indicate that the ruling was correct. The designated operations exclusion does not preclude coverage for Onni.

¶ 34    In order to show that Onni was the party performing the work and the bodily injury arose from its work, AXIS looks to Szilva's allegations and the fact that Szilva sued Onni, not USA Hoist. The scope of Szilva's allegations would be critical if we were contemplating whether AXIS had a duty to defend, but we are addressing whether AXIS had a duty to indemnify Onni or can instead take back the $5 million that it contributed to Szilva's settlement. A duty to indemnify is narrower than a duty to defend and is based on the facts. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 398 (1993). Furthermore, a party that hires an independent contractor is typically not liable for the independent contractor's negligence. *Carney v. Union Pacific R.R. Co.*, 2016 IL 118984, ¶ 33. "Because the hiring entity has no control over the details

and methods of the independent contractor's work, it is not in a good position to prevent negligent performance, and liability therefor should not attach." *Id.* at ¶ 32.

¶ 35  An officer of Onni Group (its vice president of construction) provided an affidavit which included a copy of the contract in which his organization engaged Onni Contracting (Chicago), Inc. in 2014 to "act as our General Contractor in connection with the construction of the Project" at 750 North Hudson Avenue. In the affidavit, the officer stated that Onni Contracting (Chicago), Inc. "performed general contracting services and coordination only on the Hudson project." He also swore that Onni Contracting (Chicago), Inc. "did not perform any work and all work was performed by subcontractors." Courts must accept as true any facts stated in an affidavit that is not contradicted by a counter-affidavit, despite any contrary allegations in the plaintiff's complaint. *Khan v. Van Remmen, Inc.*, 325 Ill. App. 3d 49, 56 (2001); *Kutner v. DeMassa*, 96 Ill. App. 3d 243, 247-248 (1981). The affidavit went unopposed. AXIS did not submit a counter-affidavit, nor did it present any evidence that Szilva's injuries arose out of Onni's work at The Hudson construction project. During the summary judgment hearing, AXIS also declined and waived any request for an evidentiary hearing.

¶ 36  Szilva's accident would not have occurred but for his employment by USA Hoist and USA Hoist's presence on Onni's premises. Szilva's bodily injury was caused in whole or part by and *arose out of* USA Hoist's work at the project. The record shows that Szilva was injured in the course of his employment with USA Hoist, USA Hoist, a subcontractor, was conducting operations for Onni, the general contractor, at the time of the accident, and Onni did not perform any work at the project. *Liberty Mutual Insurance Co. v. Westfield Insurance Co.*, 301 Ill. App. 3d 49, 55 (1998) (discussing cases in which a subcontractor's employee was injured on the general

contractor's premises and the court reasoned that the accident arose from the subcontractor's work for the general contractor). Szilva's bodily injuries did not arise out of Onni's work and the designated operations exclusion does not apply to Onni and provide any reason for AXIS to avoid indemnifying Onni for its potential liability to Szilva.

¶ 37    Additionally, the record indicates that neither USA Hoist's work nor its operations at the project were insured under a policy specifically procured for the project. These facts were established by an affidavit from one of Onni Group's employees (a senior administrative coordinator) who also attached a letter that its insurance broker on The Hudson project sent to USA Hoist on October 19, 2016 (approximately one month before Szilva's accident on September 24, 2016). The letter notifies USA Hoist that it "will NOT be covered under the General Liability Owner Controlled Insurance Program for the trade of [h]oists on the 750 Hudson project." The Onni Group affiant also attached a copy of a spreadsheet "showing the insurance program for the Hudson Project and all subcontractors." This business record listed the nearly 100 subcontractors that had been involved in constructing The Hudson and appears to calculate the insurance premium that was associated with each one's contribution to the project. The spreadsheet specified that USA Hoist was "EXCLUDED" from The Hudson project's wrap-up insurance program. (According to Allied World's brief, this occurred because USA Hoist did not complete the appropriate enrollment documents for the project.) Thus, the record does not show that USA Hoist's "work [was] insured elsewhere under project specific policies."

¶ 38    In short, the exclusion to Onni's coverage is not relevant because Szilva was not working for Onni at The Hudson's construction site and because an exclusion for work or operations "insured elsewhere under project specific policies" was not triggered because there was no such

coverage.

¶ 39     In any event, AXIS contends the ruling contradicts Szilva's allegations that Onni was directly liable for his injuries. However, AXIS' reliance on the lack of allegations in Szilva's complaint about USA Hoist's negligence–*i.e.*, the negligence of his employer–ignores the context of the litigation. "One fact that is common in almost all *** construction [work personal injury] cases is that the Workers' Compensation Act (820 ILCS 305/5(a) (West 2000)) gives tort immunity to the injured worker's direct employer, thereby barring the injured worker from bringing a personal injury complaint against his or her employer." *Pekin Insurance Co. v. Centex Homes*, 2017 IL App (1st) 153601, ¶ 35. " '[S]ilen[ce] as to any acts or omissions" by the [employer] must be understood as the possible result of tort immunity for employers." *Id.* at ¶ 38 (quoting *Ramara, Inc. v. Westfield Insurance Co.*, 814 F. 3d 660, 677-78 (3d Cir. 2016)); *Secura Insurance v. Phillips 66 Co.,* 2022 IL App (1st) 210069, ¶ 45 (same).

¶ 40     AXIS also erroneously tries to capitalize on the fact that Houston Casualty and Allied World contributed $10 million to the Szilva settlement, suggesting that Onni's direct insurers would not have paid if Szilva's claims did not arise out of Onni's work. This contention is unfounded because Onni was not obligated to show actual liability for Szilva's claimed damages before Onni's insurers funded the Szilva settlement. See *U.S. Gypsum Co. v. Admiral Insurance Co.*, 268 Ill. App. 3d 598, 624-26 (1994) (an insurance coverage action is not a second liability action). Furthermore, the settling parties specifically "[r]ecogniz[ed] that *bona fide* disputes and controversies exist as to the claims against and the alleged liability of the Onni defendants." Their written settlement contract also specified that the settlement payment was "not an express or implied admission of negligence, misconduct, responsibility or liability on the part of the Onni

defendants," but was "being paid in order to compromise disputed claims so that the parties may forever avoid the expense, uncertainties, and hazards of litigation." This is the purpose of a negotiated settlement. Onni's liability remains in dispute to this day and none of its insurers conceded that Szilva's claims arose out of Onni's work. See *Liberty Mutual Insurance Co. v. American Home Assurance Co., Inc.*, 368 Ill. App. 3d 948, 960 (2006) ("an agreement to settle does not constitute an admission of guilt").

¶ 41    Similarly, AXIS argues that Onni's demand that the insurers take part in a good faith settlement within available policy limits is somehow an admission in AXIS' favor. AXIS contends that Onni is trying to rewrite history by now denying that Szilva's claims arose out of Onni's work. According to AXIS, this is contrary to Onni's letter telling AXIS that there was a reasonable probability of a finding of liability against Onni and a reasonable probability of recovery in excess of policy limits, and demanding that AXIS make its policy limits available to settle Szilva's claims. AXIS, however, is comparing apples to oranges. Onni's demand letter was not an admission of Onni's liability, it was only an assessment of what might occur if a sympathetic jury heard Szilva's claims against Onni. The letter stated that Szilva was a robust, young married man who had been reduced to ICU support with his left arm missing and an impaired organ system, and when the case was going to it trial, he suffered from phantom limb pain and psychological damage that affected himself and his marriage. In contrast, Onni was a corporation and its best witness was no longer available. Onni, therefore, was "in serious danger of a [large] verdict." It is impossible to construe Onni's demand to the various insurers as an indication that Szilva's injury arose from Onni's work and triggered the designated operations exclusion.

¶ 42    AXIS' also erroneously places heavy reliance on *Home Insurance Co. v. Cincinnati*

*Insurance Co.*, 213 Ill. 2d 307, 325 (2004), for the proposition that Szilva's injury arose from Onni's work. That was an action for equitable subrogation and equitable contribution amongst insurers and the court noted that, where a case is settled before trial, there is a *presumption* that an injured worker would have prevailed on all theories of liability against a general contractor. *Id.* at 325. The court made clear that any such presumption could be overcome by a presentation of countervailing evidence. *Id.* at 325-26. Here, the only evidence presented was the Onni Group's affidavit which confirms that Szilva's injuries did not arise out of Onni's work and did arise out of USA Hoist's work.

¶ 43    AXIS relies on *American States Insurance*, 291 Ill. App. 3d at 341; and *Casualty Insurance Co. v. Northbrook Property & Casualty Insurance Co.*, 150 Ill. App. 3d 472, 476 (1986), to support its argument that Szilva's injury arose from Onni's independent acts of negligence and fell within the scope of the Navigators and AXIS contracts and their exclusions. However, like other cases that AXIS cites, these two decisions address a duty to defend. *American States*, 291 Ill. App. 3d 341-42; *Casualty Insurance*, 150 Ill. App. 3d at 476. The duty to defend and the duty to indemnify are two distinct duties, with the duty to defend being much broader. *Crum & Forster*, 156 Ill. 2d at 398; *American Economy Insurance Co. v. DePaul University*, 383 Ill. App. 3d 172, 178 (2008). These cases do not discuss an insurer's duty to indemnify, which is the issue here.

¶ 44    AXIS switches tack with respect to the other exclusion, the one we are referring to as the wrap-up exclusion, which provided, "This insurance does not apply to 'bodily injury' or 'property damage' arising out of your ongoing operations *** when a consolidated (wrap-up) insurance program has been provided for such operations." AXIS was arguing that the coverage and exclusions were triggered by the construction site/project as a whole, or because it was Onni's own

work. However, when it turns its attention to the wrap-up exclusion, AXIS argues, "It is undisputed that Szilva's bodily injury claims against Onni arose 'out of [USA Hoist's] ongoing operations.' " As discussed above, however, it was established by an uncontroverted affidavit from an Onni Group senior administrative coordinator that USA Hoist was "EXCLUDED" from The Hudson project's wrap-up insurance program. There is no factual support for AXIS' position. In the absence of a "consolidated (wrap-up) insurance program *** provided for such operations," the wrap-up exclusion was not triggered.

¶ 45    AXIS relies on foreign cases to support its arguments that the designated operations and wrap-up exclusions apply to preclude coverage for Onni. But none of the cases it cites addressed the same policy language and similar facts.

¶ 46    AXIS relies on *Nautilus Insurance Co. v. Jirsa Construction Co.*, 244 F. Supp. 3d 315 (2017) and *TNT Equipment Inc. v. Amerisure Mutual Insurance Co.*, No. 6:16-cv-1461-Orl-37DAB, 2016 WL 5146198 (M.D. Fla. Sept. 21, 2016), to support its argument that the designated operations exclusion precludes coverage. The exclusion in *Jirsa Construction* was much broader than the designated operations exclusion at issue. Its only requirement was that the bodily injury arose out of operations in New York, stating, " 'This insurance does not apply to "bodily injury" or "property damage" arising out of [operations in the state of New York], regardless of whether such operations are conducted by you or on your behalf or whether the operations are conducted for yourself or for others.' " *Jirsa Construction*, 244 F. Supp. 3d at 318. This exclusion barred coverage for a construction site personal injury claim (*Jirsa Construction*, 244 F. Supp. 3d at 318), regardless of whether coverage was being sought by the named insured or the additional insureds. In contrast, the designated operations exclusion at issue here requires that the bodily injury arise

out of work that is insured under a project-specific policy. That requirement is not met here and the designated operations exclusion does not apply here. As for *TNT Equipment*, an unreported order from Florida, the operations at issue in that case were insured under a project-specific policy, which triggered a broadly worded exclusion for any party when such coverage was in effect. *TNT Equipment*, No. 6:16-cv-1461-Orl-37DAB, 2016 WL 5146198, *6.

¶ 47 As for the foreign cases that AXIS cites to support its argument that the wrap-up exclusion applies to bar coverage for Onni, they addressed categorically different exclusions. The exclusions in the unreported decision in *Liberty Mutual Fire Insurance Co. v. Southern-Owners Insurance Co.*, 18-81018-CIV, 2020 WL 1069312, *20-25 (S.D. Fla. Jan. 24, 2020); and in *Soule v. Woodward Design + Build, LLC*, 382 So. 3rd 1052, 1060 (La. App. 4 Cir. Dec. 21, 2023); and *Skanska USA Building, Inc. v. Harlesyville Insurance Co. of New York*, 215 A.D. 3d 464, 464-65 (2023), did not require that the named insured's operations be enrolled or insured under any wrap-up insurance program, only that there was such a program. The wording of the wrap-up exclusion that was applicable to a subcontractor in *Structure Tone, Inc. v. National Casualty Co.*, 2014 WL 840408, *3 (N.Y. Sup. Ct. Feb. 27, 2014), was limited to the subcontractor and did not also apply to the construction manager or building. None of these cases indicate that the wrap-up exclusion encompassed the bodily injury claim that arose from Szilva's work for USA Hoist.

¶ 48 Finally, we find no merit in AXIS' contention that pursuant to the principles of equitable indemnity and unjust enrichment, AXIS is entitled to be reimbursed by Allied World and Onni for its contribution to the Szilva lawsuit. AXIS cites the portion of its agreement with Allied World and Onni that "no party will be viewed as a volunteer in making any payment toward settlement of the Tort Lawsuit" and "none of the parties (AXIS, [Allied World] and the Onni Entities) will

raise any waiver, volunteer payor or similar defense in response to any future litigation." AXIS has not shown through its arguments that it contributed the $5 million in the absence of a contractual obligation.

¶ 49 Returning to Navigators' appeal, Navigators contends the court should not have struck its motion for joinder in AXIS' motion asserting Navigators' designated operations and wrap-up exclusions as grounds for summary judgment. Navigators had not sought a ruling on either exclusion in its own complaint, amended complaint, or motion for summary judgment and it never obtained leave to file a joinder to AXIS' motion for summary judgment. The court found that Navigators' assertion of its own exclusions more than six years after its coverage denial letter, at least four years after it filed its original declaratory judgment action, and at least a year after Szilva's action settled, was "incredibly untimely and clearly prejudicial as the case has been settled in reliance on Navigators' position." Further, Navigators had not sought leave to amend its pleading in order to add the exclusions as a basis for summary judgment or tendered a proposed amended pleading; nevertheless, its "equivocal" request to amend did not satisfy the four factors set out in *Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill. 2d 236, 273 (1992), and was denied as untimely and prejudicial.[3]

¶ 50 Navigators now argues that joinder in AXIS' motion was not prejudicial because AXIS and Onni brought the exclusions into Navigators' case by seeking consolidation of the two

---

[3] After Navigators filed its original complaint against Onni and its primary and excess insurers (Houston Casualty and Allied World), Onni counterclaimed, and USA Hoist intervened with its own declaratory judgment action. USA Hoist sought declarations that the subcontract required USA Hoist to name Onni as an additional insured on the Navigators CGL policy and, as a result, Navigators had duties to defend and indemnify Onni. Navigators then amended its complaint to add USA Hoist as a defendant. Thus, if Navigators had sought leave to plead the two exclusions, it would have been proposing its second amended complaint.

1-24-0964 and 1-24-0968, cons.

declaratory judgment actions, and that catch-all phrases in Navigators' coverage denial letter and its original complaint had encompassed the exclusions.

¶ 51   Because we found above that neither exclusion that AXIS relied on is relevant to the Szilva action, we do not need to resolve Navigators' argument that the circuit court erred in striking Navigators' joinder to AXIS' motion for summary judgment.

¶ 52   Having reviewed the record, authority, and arguments, and rejected Navigators' and AXIS' appeals, we now affirm the circuit court.

¶ 53   Affirmed.